JOHN A. THOMPSON, Appellant, v. EARLE E. BUTLER, Appellee.

No. 41427.

JUNE 24, 1932.

Parrish, Cohen, Guthrie & Watters, for appellee.

Bradshaw, Schenk & Fowler, for appellant.

GRIMM, J.—The petition in this case was filed in the Polk County district court on August 10, 1931. The plaintiff in said petition sought to recover from the defendant the sum of $100,-000, with interest, as damages, by reason of the publication of alleged slanderous statements contained in a letter written by the defendant, Earle E. Butler, to a party then living in the state of Florida. On September 8, 1931, the defendant filed a special appearance and an attack on the jurisdiction of the court, in which there is alleged, among other things, that there was no original notice served upon the defendant for the September, 1931, term of district-court of Polk County, Iowa, but that a purported service of an original notice was made upon Mrs. Vera Leonard, who was employed as a maid in the household of Earle E. Butler, the defendant, said writ of service being in words and figures, to wit:

"State of Iowa, Polk County, ss.

"Received the within notice this 10 day of Aug., 1931, and on the 12 day of Aug., 1931, I personally served the same on the within named Earle E. Butler by leaving a copy at the house of Earle E. Butler, in the city of Des Moines, Des Moines Township, Polk County, Iowa, the same being his usual place of residence, with Vera Leonard a member of the family over fourteen years of age, said Earle E. Butler not found in Polk County, Iowa, after diligent search."

The special appearance also contains the following:

"The defendant further shows to the court that the said service is improper and illegal and does not confer any jurisdiction upon this court to hear, try and determine this cause and that the said Vera Leonard is not a member of the family of the defendant, and in support of said special appearance, there is hereto attached an affidavit of the said Vera Leonard referred to herein and which is made a part hereof. That the service of the

original notice and the return thereon is defective and the court has no jurisdiction over this cause and against the defendant.''

The substance of the affidavit of Vera Leonard attached is that she was then of legal age and began working for the defendant about the middle of April, 1931; that she was employed as a maid and was paid by the week; that she was so employed as a maid on the day of this attempted service; that the officer asked at the Butler residence if Mr. Butler was at home and he was informed that he was not; that the officer came back the next day and handed her a paper; that he did not read the same to her. The affidavit contains the following:

''I further state that I am not a member of Earl E. Butler's family and that my sole reason for being there is that I am employed and paid so much per week to do certain work in and about the household of Earl E. Butler. That I have no authority to sign any paper on behalf of Earl E. Butler or to accept service of any notice for him. I further state that when I am not employed, I make my home with my sister and that I consider my sister's home my place of residence while in the city of Des Moines. I further state that in working for Earl E. Butler, I have no definite contract of employment, but I can quit the service of Mr. Butler at any time or he can discharge me at any time that he sees fit for any purpose. I further state that I do not consider myself a member of his family and outside of the services that I perform for Mr. Butler, I am free to do with my time as I see fit.''

Thereafter, the said Vera Leonard, as the maker of an affidavit, was called for cross-examination under the statute. Parts of said cross-examination are as follows:

''I worked for the family sometime during last year, and then left for a while and came back in April * * * I have worked for the Butlers from sometime in May, 1930, until about the 1st of January, 1931. Then Mr. and Mrs. Butler went to Florida. During that time, I went back to L. S. Hill's where I was employed as a maid. I had been there for several years before I went to Butler's. I was there from January until in April, or about the first of May. When Mr. and Mrs. Butler came back from Florida, I went back to Butler's again in this apartment. I was so employed as a maid at Butler's on the 11th and 12th day

of August, 1931. I don't know that I would call it living there, but I had my room there. I slept there every night. During my work, during the time I was employed by Mr. Butler, I had my sleeping quarters regularly in Mr. Butler's apartment. I was eating my meals there during the month of August, mostly, when I was there. * * * I couldn't say whether Mr. and Mrs. Butler left on August 11th, because I don't know. I wasn't in the apartment when they left.''

It appears that this original notice was given by this maid to a brother of the defendant's, who was then in Des Moines. The witness further says:

''Q. The family consists of Mr. and Mrs. Butler, a son and a daughter? A. Yes, sir.''

It further appears that the maid at that time had a sister living at 1206 15th St., Des Moines, and the maid testified that when not employed, she made her home with her sister. It also . appears that she is listed in the city directory of Des Moines as living at 3217 Cottage Grove, where, in 1930, she made her home with L. S. Hill. This maid has been married and has three children living with her father and mother at Sabula, Iowa. At one point in the examination, she said: ''Yes, sir, that [Sabula, Iowa,] is my home. I was born and raised there.'' It appears she is the sole support of these children, and she says:

''I am in Des Moines earning my bread and butter for the purpose of supporting these children. I don't have any definite contract of employment with Mr. Butler, but only just an understanding that I would stay until they returned from Florida.'' She further says: ''I am not adopted by Mr. Butler. No papers have been taken out to that effect. No attempt has ever been made. I come and go when I want to. I quit when I want to.''

The record shows that she was actually employed by the defendant's wife, although the defendant's check was used in paying her for her services.

From the foregoing, which is illustrative of and which is the substance of the record, it will be noted that Mrs. Vera Leonard, the maid, occupied a more or less typical position as a domestic in the home of Mr. Butler. She had no fixed term of employment and received her pay by the week. She could leave any time and

she could be discharged any time. As is customary under such circumstances, she had sleeping quarters in the house and ate most of her meals there, presumably in the kitchen or in the servants' dining room, as the case might be.

At the time of the attempted service, Mr. and Mrs. Butler and the two children (both grown) had left the home and could not be found. The record does not disclose where they were at that time.

The sole question before us for determination is whether, upon such a state of facts, under the law, the trial court obtained jurisdiction of the defendant. As previously noted, the trial court sustained the special appearance and dismissed the plaintiff's petition.

I. The statute we are called upon to interpret and which appears in the chapter on "Manner of Commencing Actions," is as follows:

"11060. Method of Service. The notice shall be served as follows:

"1. By reading it to the defendant or offering to do so in case he neglects or refuses to hear it read, and in either case by delivering him personally a copy thereof, or, if he refuses to receive it, offering to do so.

"2. If not found within the county of his residence, or if, because of his sickness or other disability, personal service cannot be made upon him, by leaving a copy thereof at his usual place of residence with some member of his family over fourteen years of age, or with the person having the care and custody of him, or with the head of the family where he resides.

"3. By taking an acknowledgment of the service indorsed thereon, dated and signed by the defendant."

This is followed by Section 11061, which reads as follows:

"11061. Return of personal service. If served personally, the return must state the time, manner, and place of making the service, and that a copy was delivered to defendant, or offered to be delivered. If made by leaving a copy with the family, it must state at whose house the same was left, and that it was the usual place of residence of the defendant, and the township, town, or city in which the house was situated, the name of the person with whom the same was left, or a sufficient reason for omitting to do

so, and that such person was over fourteen years of age and was a member of the family.''

In Chapter 4 of the Code, entitled ''Construction of Statutes,'' we find the following:

''63. Rules. In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute: * * *

''2. *Words and phrases.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning.

''64. Common-law rule of construction. The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.''

In connection with the statutory provisions hereinbefore quoted, this court has spoken at various times in reference to the interpretation of such statutes as the one under consideration. In Hodges v. Brett, 4 G. Greene (Iowa) 345, in a case involving an original notice, this court said:

''The only safe rule, in cases where jurisdiction depends upon the process, is to require a strict observance of the statute.''

In Bradley Mfg. Co. v. Burrhus, 135 Iowa 324, this court had under consideration a case of substituted service, such as the one at bar. In commenting upon the statutes, the court said:

''The method of procedure is extraordinary in character, and allowable only because specifically authorized; and, in common with other legislative acts which mark a departure from the ordinary, the provisions must be strictly construed, in the sense, at least, that the operation thereof may not be abridged or extended by the courts.''

In Hass v. Leverton, 128 Iowa 79, this court had under consideration a substituted service on the defendant's wife, who was

sixty-seven years of age and was unable to understand, read or write the English language. This court said:

"But our statute merely requires that the notice be left 'with some member of the family over 14 years of age;' * * * and this is made equivalent to actual service, upon the supposition that such person sustains such a relation of confidence to the one sought to be served as that he will be likely to bring the notice to his attention and thereby effect precisely what actual service is intended to accomplish."

In Whalen v. Cadman, 11 Iowa 226, this court had under consideration exemptions to the head of a family. The plaintiff brought an action for replevin for two horses and a set of harness which the plaintiff claims were exempt from execution. Before the seizure of the property, the plaintiff rented a farm and moved onto it with his brother and his brother's wife, the plaintiff being unmarried. The two brothers worked the farm on shares, with no express agreement as to the amount each was to receive. He procured the brother's wife to keep house for him, had the supervision of the house, and procured and furnished the necessaries for housekeeping and living. The court held that he was not the head of the family, and said:

"In the case before us the married brother and his wife, in no proper sense belong to the family of the plaintiff. He had no control over them, except such as resulted purely and exclusively, from contract. He had no right to exact obedience from them or to direct their movements, except so far as their agreement bound them to take care of the house."

In this connection, it will be borne in mind that under the established rules of interpretation in this state, exemption statutes are to be and are always liberally construed in favor of the exemption.

Some other Iowa cases, while not directly in point, nevertheless have an indirect bearing on the exact point under consideration. For illustration, in Snyder v. Nixon, 188 Iowa 779, cited by the appellant, plaintiff sought to recover from the estate of her deceased father for services rendered to him. This court said:

"The general rule is that, where one renders services of value

to another, with his knowledge and consent, the presumption is that the one rendering the services expects to be compensated, and that the one to whom the services are rendered intends to pay for the same; and so the law implies a promise to pay. Where, however, the family relationship exists, between the one seeking to recover and the one sought to be charged, and services are rendered one to the other within the family, the presumption is that they were rendered gratuitously. This rests upon common experience, that members of the same family, while the family relationship exists, do not usually expect to be remunerated, and do not usually expect to make remuneration for services rendered by one to the other, rendered within the family circle. The duties are reciprocal, and the services are presumed to be reciprocal. A member of a family rendering services to another member of the same family, where the services rendered grow out of the reciprocal duties of that family relationship, and are within the scope and purpose of the family organization, cannot recover therefor, unless there is an express promise to pay for the services, or unless the showing made negatives the thought that they were gratuitous, or, that is, unless it is shown that they are rendered under such circumstances as makes it manifest that there was both an expectation of receiving remuneration and an intention of paying for the services.''

The appellant also cites the following cases: In re Estate of Bishop, 130 Iowa 250; Neasham v. McNair, 103 Iowa 695; Menefee v. Chesley, 98 Iowa 55; Linton v. Crosby, 56 Iowa 386; Arnold v. Waltz, 53 Iowa 706; Tyson v. Reynolds, 52 Iowa 431.

We have examined these cases carefully and find none of them in point. Moreover, broadly speaking, many statements therein contained support appellee's position fully as much as they do the position of the appellant. In some of the cases, definitions are quoted which manifestly are not applicable to the case at bar.

Numerous cases from other jurisdictions are cited by the appellant. One of them, at least, is by a *nisi prius* court; others are from intermediate courts, such as courts of appeal. These cases have all been carefully examined. Most of them will be found to have distinguishing differences in statutes or facts, and as to the others, we cannot agree with the reasoning therein contained.

The appellant has cited in support of his position definitions from numerous dictionaries. We deem it unnecessary to analyze these definitions. Manifestly, many of them apply to literary uses made of the term "family;" others are now obsolete by reason of change in social conditions, or otherwise.

Upon the whole record, we conclude that the language of the statute under consideration does not contemplate that a person whose sole contact with the family is that of an employee for hire is a member of the family. A close survey of existing conditions of which this court will take notice leads clearly to this conclusion. On the whole, no good purpose would be served in detailing them, and we deem further discussion unnecessary.

Appellant contends that the court erred in dismissing the plaintiff's petition. Suffice it to say that the court found that no defendant had been properly served; therefore the case was not pending, and it was proper to dismiss the petition.

It follows that the trial court correctly ruled, and the cause must be, and is,—Affirmed.

All the justices concur.