**Kim R. NOLAN, Plaintiff and Appellee,**

v.

**Thomas W. NOLAN, Defendant and Appellant.**

**Nos. 17616, 17623.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1992.

Decided Sept. 16, 1992.

Sean M. O'Brien of Erickson, Helsper & O'Brien, Brookings, for plaintiff and appellee.

M.E. McCann of McCann, Martin & McCann, Brookings, for defendant and appellant.

HENDERSON, Justice.

Thomas W. Nolan (father) appeals a judgment and decree of divorce and a subsequent contempt judgment for nonpay-

ment of the child support obligation established in the divorce decree. Kim R. Nolan (mother), by notice of review, appeals a portion of the contempt judgment granting father certain credits against his child support arrearages. We reverse and remand.

## FACTS

Mother and father were married in 1978 and three children were born during the course of the marriage. The couple resided in Brookings, South Dakota. Father is a disabled veteran and suffers from a personality disorder and depression.

By September 1986, father was also experiencing severe problems with alcohol, drugs or both. That month, he left the marital home and the state without telling mother or anyone else where he was going. He ended up in Nashville, Tennessee, on or about September 13, 1986. He was a "little drunk" on his arrival but called mother from a phone booth at a bus station. Father stayed at a mission in Nashville for about a week and then moved on to Pleasantview, Tennessee, a town about thirty miles from Nashville. Father gave mother his phone number after he moved and he remained in Pleasantview for the next several months.

On October 3, 1986, mother filed an affidavit with the trial court seeking leave to serve process in a divorce action against father by publication in accordance with SDCL 15–9–7 and 15–9–8. In her affidavit, mother averred she had, "no idea of the location or whereabouts of [father]." The trial court subsequently granted mother's request and entered its order allowing the divorce summons to be served by publication. The summons was published in a local newspaper for four successive weeks from October 17 through November 7, 1986. On January 12, 1987, the trial court entered a default divorce decree which, among other provisions, required father to pay $300 per month in child support for the parties' three children. On February 19, 1987, the trial court entered an amended judgment and decree of divorce awarding

mother possession of the marital home which had not been mentioned in the original divorce decree. The provisions concerning child support, however, remained the same.

Father returned to Brookings in the spring of 1987 and received copies of the divorce papers from mother at that time. The parties attempted a reconciliation and resumed living together as they had before their divorce. In approximately May of 1989, father again left mother and the children and he currently resides in the Veterans' Administration Medical Center located in Hot Springs, South Dakota.

On February 12, 1991, mother filed an affidavit and application for a trial court order for father to show cause why he should not be held in contempt for failure to pay child support. In her affidavit, mother averred father had failed to pay any child support whatsoever. In his responding affidavit, father requested that the trial court determine that the parties' divorce decree was entered without jurisdiction on the issue of child support because mother obtained service in the action by publication at a time when she knew his whereabouts and was in constant telephone contact with him.

The show cause hearing began on March 6, 1991. This part of the hearing concentrated on the jurisdictional validity of the divorce decree. The trial court upheld the validity of the decree in a memorandum opinion filed on March 22, 1991[1]. The show cause hearing continued on April 15, 1991, and, on May 6, 1991, the trial court entered its findings of fact, conclusions of law and a judgment holding father in contempt for failing to pay child support. Father appeals.

## ISSUE

DID THE TRIAL COURT ERR IN UPHOLDING THE VALIDITY OF THE PARTIES' DIVORCE DECREE? WE HOLD THAT IT DID.

Father raises two substantive issues and two evidentiary issues in an effort to assail

1. The memorandum opinion was later incorporated by reference in the trial court's findings of fact and conclusions of law.

the trial court's determination that the parties' divorce decree was jurisdictionally valid. However, these four issues can be consolidated under the general question of whether the trial court erred in upholding the validity of the decree.

SDCL 15–9–7 provides:

A summons, writ, order, or decree may be served by publication under the conditions and in the manner provided hereinafter and in §§ 15–9–8 to 15–9–21, inclusive.

Where the person on whom the service of the summons, writ, order, or decree is to be made cannot, after due diligence, be found within the state and that fact appears by affidavit to the satisfaction of the court or a judge thereof, and it in like manner appears that a cause of action exists against the defendant in respect to whom the service is to be made or that he is a proper party to an action relating to real or personal property in this state, or to the writ, order, or decree, such court or judge may grant an order that the service be made by publication of the summons in any of the cases described in §§ 15–9–8 to 15–9–15, inclusive.

Service of process by publication is specifically authorized in divorce actions by SDCL 15–9–8: "The court or a judge thereof may grant an order pursuant to § 15–9–7 where the action is for divorce or for a decree annulling a marriage."

In *United Nat. Bank v. Searles*, 331 N.W.2d 288, 292 (S.D.1983), this court made clear that, "when a party litigant discovers the address of an out-of-state defendant before or during the pendency of service by publication of notice, that party litigant must then attempt to obtain personal service of process *to secure in personam jurisdiction over defendant.*" (emphasis added).

In this instance, mother signed an affidavit stating she did not know father's whereabouts in order to serve the divorce papers. However, the trial court specifically found from the bench [2] that father's address was known by October 8, 1986. This was still

during the pendency of the divorce action. The trial court further found that sometime between September 14, 1986, and October 8, 1986, mother was given a phone number where father could be reached and did learn father was in Tennessee. During the initial hearing on this matter, mother herself conceded some knowledge of father's whereabouts during the pendency of the divorce action:

Q: [by Mr. McCann] Did he call you in November of '86?

A: [Kim Nolan] I might have known where he was by November or December.

Q: Did you make any attempt—?

A: I knew—I knew. I don't know how I knew. I don't even remember how I knew, but I knew he was down in Nashville in rehab.

\* \* \* \* \* \*

Q: Well, isn't it a fact that in November and December that you and he talked on the phone more than once?

A: No.

Q: That's not true?

A: (Head shake. No verbal response.)

Q: You are saying you only talked to him once?

A: I think so.

Q: Okay. And at that time, you knew where he was at?

A: I knew that he was in Nashville in the rehab center.

Q: And you knew where it was?

A: I knew it was in Nashville. I don't remember where it was.

Thus, by mother's own testimony, it is clear she knew father was in Nashville, Tennessee, at least a month and possibly two months prior to entry of the initial divorce decree. Although the trial court's findings and conclusions placed particular emphasis on the fact mother did not have a precise address for father in Tennessee, this court has placed a heavier duty on those seeking exemption from personal ser-

2. The facts found from the bench were incorporated by reference in the trial court's memorandum opinion which was later incorporated in its findings of fact and conclusions of law.

vice requirements than to simply ignore the information they do obtain.

> As we held in *Ryken v. State*, 305 N.W.2d 393 (S.D.1981), before service by publication under SDCL 15-9-7 may be ordered, the party instituting the litigation must exhaust all reasonable means available in an effort to locate interested parties to the litigation. Clearly, a legally sufficient, due diligent search should have the purpose of generating information. *If some of that information is developed and bears fruit only after service by publication has been initiated, party litigants are not free to seek haven under or within the framework of a former state of facts.*
>
> Appellee's duty to apprise appellant, the interested party, did not evaporate once it had conducted a search which comported with the "due diligence" standards in light of its discovery as to the actual whereabouts of appellant. *Appellee owed a duty to put this additional information to use, rather than restricting its view to hopes of obtaining a default judgment by publication.*

*United Nat. Bank*, 331 N.W.2d at 292 (emphasis added).

■ In this instance, there is no indication in the record that mother even attempted to use her knowledge of father's telephone number or his presence in Nashville, Tennessee to ascertain his address and accomplish personal service of process. Under *United Nat. Bank*, mother was required to contact the appropriate Tennessee authorities and at least attempt to ascertain father's address prior to the entry of the default divorce decree. Since mother failed in any attempt to obtain personal service of process in the divorce action and thereby secure in personam jurisdiction over father, the default judgment entered in this case is void and should have been vacated by the trial court. *See, United Nat. Bank, supra. See also, Ryken v. State*, 305 N.W.2d 393 (S.D.1981) (judgment in quiet title action vacated where

defendants should not have been served by publication because plaintiffs failed to exercise due diligence in attempting to discover defendants' interests in property).

■ Moreover, mother's contention that father had actual notice of the pendency of the divorce proceedings requires no change in the above conclusion. Service of process vests a court with jurisdiction to act. *Hartley v. Jerry's Radio & Electric Shop*, 74 S.D. 87, 48 N.W.2d 925 (1951). Thus, due and legal service of process is necessary to give a court jurisdiction over a defendant. *Kromer v. Sullivan*, 88 S.D. 567, 225 N.W.2d 591 (1975). *See also, Tucker v. Johnson*, 275 Ark. 61, 628 S.W.2d 281 (1982) (service of valid process necessary to give court jurisdiction over defendant). Further, "[j]udgments by default rendered without valid service of notice are judgments rendered without jurisdiction and are therefore void." *Tucker*, 628 S.W.2d at 283. *See also, Kromer, supra.* Thus, in *Tucker*, where there was a defect in the summons format used by the plaintiff and a default judgment was taken, the Arkansas Supreme Court found the defect so substantial as to render the process voidable and reversed a trial court order refusing to set aside the default judgment. As to the issue of the defendant's actual notice of the action, the Arkansas Court stated:

> Where a defect in the summons is so substantial as to render the process void, there can be no waiver of the defect. Nor does actual knowledge of a proceeding validate defective process. A default judgment is valid by virtue of valid process, and not by the fact that a defendant otherwise learns that a lawsuit is pending.

*Tucker*, 628 S.W.2d at 284 (citations and footnote omitted).

The Arkansas Supreme Court revisited this issue in *Wilburn v. Keenan Companies, Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989). In *Wilburn*, an Arkansas plaintiff commenced an action against a Missouri defendant by forwarding the defendant a copy of the summons and complaint by

certified mail rather than "restricted delivery" mail as required by the Arkansas rules. The plaintiff took a default judgment and the trial court denied a subsequent motion by the defendant to set the judgment aside. The Arkansas high court held:

> Statutory service requirements, being in derogation of common law rights, must be strictly construed and compliance with them must be exact. The same reasoning applies to service requirements imposed by Rules of Court. Proceedings conducted where the attempted service was invalid render judgments arising therefrom void *ab initio* ... Consequently, the default judgment was void *ab initio*, and the trial court erred in denying appellant's motion to set it aside.

*Wilburn*, 768 S.W.2d at 532 (citations omitted). As to any issue over the defendant's actual knowledge of the action prior to entry of the default judgment, the Arkansas Court reiterated its holding in *Tucker* that, "[a]ctual knowledge of a proceeding does not validate defective process." *Id.*

More closely on point is the decision of the Arizona Supreme Court in *Preston v. Denkins*, 94 Ariz. 214, 382 P.2d 686 (1963). In *Preston*, the plaintiff served process in a quiet title action by publication on the basis of an affidavit that the residences of the defendants were unknown. The plaintiff subsequently took a default judgment in the action. Approximately three years later, the defendants moved to vacate the judgment and file an answer, contending the plaintiff had falsely stated in his affidavit that he did not know the residences or whereabouts of the defendants. The trial court held the default judgment void for lack of jurisdiction over the named defendants and the plaintiff appealed. The Arizona high court held:

> The jurisdiction of the court to enter any judgment must rest on the affidavit in support of service by publication. Since this affidavit is ineffective to secure jurisdiction by publication the court neces-

sarily had no power to render judgment against anyone in reliance thereon. The court not only had the power but the duty to expunge from the record the judgment which clearly is void.

*Preston*, 382 P.2d at 692. As to the plaintiff's contention that laches precluded the defendants from bringing the motion to vacate the judgment, the Arizona Court observed, "[t]he general rule is that mere lapse of time is no bar to an attack on a void default judgment." *Id. Accord, Kromer, supra,* (motion to vacate void judgment not restricted by reasonable time provisions of SDCL 15–6–60(b)).

## CONCLUSION

 Based upon the foregoing authorities and particularly our own settled law in *United Nat. Bank, supra,* we hold that the trial court in the present case never acquired in personam jurisdiction over father sufficient to validate the default divorce decree rendered on mother's invalid service of process by publication. The decree was void *ab initio* and the trial court had no alternative but to vacate the decree on father's jurisdictional challenge. *See, Kromer, supra* (not within discretion of court to decide whether a void judgment should be vacated). Like the void judgment in *United Nat. Bank,* the divorce decree is reversed and the matter is remanded to the trial court with instructions to vacate the decree. Moreover, because the disobedience of a void order is not punishable as contempt, we also reverse the trial court's judgment holding father in contempt for nonpayment of child support. *See, Karras v. Gannon,* 345 N.W.2d 854 (S.D.1984) (disobedience of void order not punishable as contempt). This disposition obviates any necessity of addressing mother's notice of review issue concerning the credit allowed father against his child support arrearages.

Reversed and remanded.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

WUEST, J., concurs specially with writing.

WUEST, Justice (special concurrence).

I agree with the majority opinion. I write only to suggest laches may apply in a situation where one of the parties to an invalid divorce decree remarries and a child is born of that marriage. The decision whether laches applies in that scenario should be made when the question arises.