1998 SD 9

**Deloris E. WAGNER, Plaintiff and Appellant,**

v.

**Clifford TRUESDELL, Defendant and Appellee.**

**No. 19790.**

Supreme Court of South Dakota.

Considered on Briefs March 27, 1997.

Reassigned Oct. 29, 1997.

Decided Jan. 28, 1998.

Stan H. Anker, Rapid City, for plaintiff and appellant.

Benjamin J. Eicher of Wallahan and Eicher, Rapid City, for defendant and appellee.

MILLER, Chief Justice (on reassignment).

[¶ 1.]Deloris E. Wagner appeals the dismissal of her negligence action and a summary judgment for Clifford Truesdell on the grounds of defective service of process. We reverse and remand.

## FACTS

[¶ 2.]In 1993, Wagner slipped and fell in a parking lot owned by Truesdell in Rapid City, South Dakota. She alleges the fall was the result of Truesdell's negligent maintenance of the lot and that she sustained various injuries and damages as a result thereof. She attempted to commence a negligence action against Truesdell in 1996.

[¶ 3.]Truesdell suffered from Alzheimer's Disease and was, practically speaking, incompetent.[1] However, he had never been legally adjudicated incompetent and there was no judicially appointed guardian for him. Rather, his wife took care of him and conducted all of his business affairs under a power of attorney. Truesdell and his wife owned homes in both Rapid City and Las Vegas, Nevada. This required Mrs. Truesdell to make periodic visits to Las Vegas. During these visits, she would sometimes leave her husband in Rapid City in the care of a close friend named Gordon Richmond. Richmond, who was not related to Truesdell, also owned a home in Rapid City. However, when Richmond cared for Truesdell, he stayed with him in Truesdells' home.

[¶ 4.]Wagner attempted to commence the action against Truesdell on January 15, 1996, through service of a summons and complaint by a Pennington County constable. Mrs. Truesdell was on one of her trips to Las Vegas when the constable attempted service, and Richmond was staying with Truesdell in Truesdells' home. Richmond answered the door and, when the constable asked for Truesdell, he told the constable Truesdell was mentally incompetent. The constable then asked for a family member, but was told that Mrs. Truesdell was in Nevada. Richmond also informed the constable that Truesdell was in his care until Mrs. Truesdell

---

1. Truesdell was, at the time, completely unable to manage his own personal or business affairs. As a result of his illness or its complications, he has passed away since the trial court proceedings on this matter.

returned. At that point, the constable indicated that, since Truesdell was in Richmond's custody, he would leave the papers with Richmond. Richmond said he would see to it the papers got to Truesdell's attorney.

[¶ 5.]Counsel for Truesdell subsequently filed motions to dismiss and for summary judgment, arguing defective service of process. A hearing was held and the trial court granted Truesdell's motions. Due to expiration of the applicable statute of limitations, Wagner did not have a new summons and complaint served, but instead brought this appeal.

## DECISION

### Was service of the summons and complaint on Truesdell defective?

[¶ 6.]We hold that service of process in this case was not defective because there was substantial compliance with the personal service mandates of SDCL 15–6–4(d)(10), which requires that the summons be served "to the defendant personally."

[¶ 7.]We have held that:

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*State v. Bunnell*, 324 N.W.2d 418, 420 (S.D. 1982) (internal citations and quotations omitted); *see also Larson v. Hazeltine*, 1996 SD 100, ¶ 19, 552 N.W.2d 830, 835; *Rans v. State*, 390 N.W.2d 64, 66 (S.D.1986).

[¶ 8.]This Court has held that the purpose of service of process is to "advise the defendant that an action or proceeding has been commenced against him by plaintiff, and warn him that he must appear within a time and at a place named and make such defense as he has[.]" *Hartley v. Jerry's Radio & Elec. Shop*, 74 S.D. 87, 90, 48 N.W.2d 925, 927 (1951) (citation and internal quotation omitted). We hold that, in this case, the purpose of the statute was met.

[¶ 9.]While we emphasize the purpose of SDCL 15–6–4(d)(10) as being that of notice, it is equally important to state that notice alone is not enough. This is the issue that the Minnesota Supreme Court was faced with in *Thiele v. Stich*, 425 N.W.2d 580 (Minn.1988). In *Thiele*, the court held that a service of process statute requiring a defendant to be served personally or by leaving a copy of the papers at the defendant's abode was not satisfied by leaving the papers with the defendant's receptionist at his place of work. The Minnesota Supreme Court held that "actual notice" alone is not enough. The court phrased its holding as: "Actual notice will not subject defendants to personal jurisdiction absent *substantial compliance* with Rule 4." *Id.* at 584 (citing *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986); *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)) (emphasis added). We agree with the Minnesota Supreme Court that actual notice coupled with substantial compliance is sufficient to satisfy personal service of process requirements and we hereby adopt that holding as the law of our state.[2]

---

**2.** To further support our adoption of a substantial compliance rule, it should be noted that it is well settled in other jurisdictions that strict compliance with personal service rules is not required when a party that is to be served attempts to avoid service. *See Carlson v. Cohen*, 302 Minn. 531, 223 N.W.2d 810 (1974) (holding that the placement of process papers under the windshield wipers of defendant's car as defendant tried to drive off and avoid service was sufficient); *Flex Credit, Inc. v. Winkowitsch*, 428 N.W.2d 236 (N.D.1988) (holding that proper service was effected by placing the papers in the entryway of defendants' house when defendants refused to answer their door in an attempt to avoid service). These exceptions to a strict reading of service of process statutes are allowed because the objective of giving notice is attained and nothing else could really have been done to ensure proper service. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1095 (2d Ed. 1987). However, it should be noted, the present case does not address instances of attempts to avoid service. Our holding in this case is a narrow one.

[¶ 10.]The realities of a case must be considered when proper service of process is questioned. To follow the strict reading of SDCL 15–6–4(d)(10) urged by Truesdell would be an absurdity. The constable could have handed the papers to Truesdell and then Richmond would have immediately taken them away from Truesdell to give to Truesdell's attorney. There logically is no need in this case for that "middle-person" step to fulfill the purpose of SDCL 15–6–4(d)(10).

[¶ 11.]In this case, what more could Wagner have done? The constable went to Truesdell's home and asked for Truesdell. Richmond informed him that Truesdell was mentally incompetent and was in his care. When the constable asked for Mrs. Truesdell, he was informed that she was in Nevada. He then presented the papers to Truesdell's caretaker who assured him that he would see to it that Truesdell's attorney received the papers. The entire time, Truesdell, who it is not disputed was mentally incompetent, was present in the house, and for all practical purposes could not have comprehended what was happening when he was handed the service of process papers. Wagner substantially complied with SDCL 15–6–4(d)(10), and that was enough to satisfy the service of process requirements in this case.

[¶ 12.]We reverse and remand for proceedings consistent with this opinion.

[¶ 13.]AMUNDSON and KONENKAMP, JJ., concur.

[¶ 14.]SABERS and GILBERTSON, JJ., concur in result.

SABERS, Justice (concurring in result).

[¶ 15.]I agree that Wagner effectively served Truesdell by substantial compliance with SDCL 15–6–4(e) (substituted service). The statute contemplates a situation where the person sought to be served (Truesdell) resides with another family (Richmond). This case presents the converse situation, i.e., "the family of another" (Richmond) resides with Truesdell. Here, a strict and technical interpretation of SDCL 15–6–4(e) disallowing service would undermine the purpose of the statute. The spirit and the purpose of the statute were met. Clearly, that constitutes "substantial compliance."

GILBERTSON, Justice (concurring in result).

[¶ 16.]Given the parties' agreement as to Truesdell's incompetence, I agree with the majority that holding the constable should have served Truesdell directly would simply lead to absurdity in this case. What would have been the practical effect of such service? As the majority mentions, the constable would have handed the papers to Truesdell and then Richmond would have immediately taken them away from Truesdell to give to Mrs. Truesdell or the Truesdells' attorney. That is exactly what happened. Nevertheless, I disagree with the majority view that valid service of process was accomplished through substantial compliance with personal service requirements.

[¶ 17.]An advocacy of the doctrine of substantial compliance finds absolutely no support in our statutes concerning service of process. In *Matter of Gillespi*, 397 N.W.2d 476 (S.D.1986), this Court unanimously struck down service of process by first-class mail. Although the defendants admitted they received the pleadings, we held personal service was "mandatory." *Gillespi*, 397 N.W.2d at 478. Subsequently in *Mueller v. Zelmer*, 525 N.W.2d 49 (S.D.1994), service of process was carried out by a county nonresident which, at the time, did not conform to the residency requirements of SDCL 15–6–4(c). Rather than relying on any claims of substantial compliance, the three-Justice majority upheld the service as valid only because the defendant had signed an admission of service. In so doing the majority declared:

> [The] fact defendant knows of the action because he may have received a copy of the summons and complaint in connection with an attempted but invalid service where no admission of service exists is not sufficient statutory notice of the action.

*Mueller*, 525 N.W.2d at 51 (citing *Brown v. State*, 195 Ga.App. 872, 395 S.E.2d 73 (Ga.Ct. App.1990)). Two Justices dissenting, argued for a more strict interpretation of the statute,

finding that the admission of service did not save the initial improper service.

> Without valid service of process the trial court has no jurisdiction to act. *Hartley v. Jerry's Radio & Electric Shop,* 74 S.D. 87, 48 N.W.2d 925 (1951). One may research over 100 years of decisions and find the law has remained the same. No proper service. No jurisdiction. *Ayers, Weatherwax & Reid Co. v. Sundback,* 5 S.D. 31, 58 N.W. 4 (1894).

*Mueller,* 525 N.W.2d at 52 (Henderson and Amundson, JJ., dissenting).

[¶ 18.]The majority's ready adoption of the doctrine of substantial compliance in the matter at hand now makes it difficult to distinguish the instant case from the opposite result of the above South Dakota authority. Moreover, adoption of the doctrine provides no guidance to the bench and bar as to what constitutes substantial compliance with personal service requirements. In this age of FAX machines and computerized electronic mail, such uncertainty is unacceptable. Accordingly, I disagree with the majority's adoption of the doctrine of substantial compliance in this context.

[¶ 19.]Rather than holding Wagner substantially complied with personal service of process requirements, I would hold she accomplished valid substitute service of the summons and complaint under SDCL 15–6–4(e).[3] The statute provides in pertinent part:

> Service in the following manner shall also constitute personal service. If the defendant cannot be found conveniently, service may be made by leaving a copy at his dwelling in the presence of a member of his family over the age of fourteen years or if the defendant resides in the family of another, with a member of such age of the family with which he resides.

Here Truesdell could not be "found conveniently" as the constable was denied direct access to him by Richmond.[4] As a substitute, Richmond's offer of accepting the papers on behalf of Truesdell complied with SDCL 15–6–4(e) if Richmond was either a member of Truesdell's family or Truesdell was residing with Richmond.

[¶ 20.]Some courts, for purposes of accepting substitute service of process, have held a "family member" is not necessarily limited to a person in kinship with the defendant by blood or marriage. *See Couts v. Maryland Casualty Company,* 306 So.2d 594, 595 (Fla. Dist.Ct.App.1975). In fact, some courts have found kinship "irrelevant" in determining family membership in this context. *Id.* Other courts have said that a "family" for substitute service purposes includes more than the husband, wife and their children. *Kenner v. Schmidt,* 252 Or. 218, 448 P.2d 537, 539 (1968). *See also Hauser v. Schiff,* 341 So.2d 531, 532 (Fla.Dist.Ct.App.1977); *Midwest Acceptance Corp. v. Blount,* 777 S.W.2d 645, 646 (Mo.Ct.App.1989); Annotation, *Who is Member of Family Within Statute Relating to Service of Process by Leaving Copy With Member of Family,* 136 ALR 1505 (1942). Despite these authorities, I would *not* expand the definition of Truesdell's "family" to include Richmond. Rather, I would hold Truesdell was "resid[ing] in the family of another," that being Richmond.

[¶ 21.]Black's Law Dictionary defines "reside" as to "[l]ive, dwell, abide, sojourn, stay, remain, lodge." Black's Law Dictionary, 1176 (5thEd. 1979). "The word 'live' is commonly used as a synonym for 'reside[.]'" *Curtis v. Curtis,* 330 Mich. 63, 46 N.W.2d 460, 462 (1951). While other cases attempt to define what constitutes a legal residence for various purposes such as voting and ven-

---

3. While we do not normally address issues not ruled upon by the circuit court and arising for the first time on appeal (*Watertown v. Dakota, Mn. & Eastern R. Co.,* 1996 SD 82, ¶26, 551 N.W.2d 571, 577), the issue of the validity of service of process goes to the trial court's *jurisdiction* to act. *Nolan v. Nolan,* 490 N.W.2d 517 (S.D.1992). Jurisdictional issues may be raised at any time and are subject to de novo review by this court. *Devitt v. Hayes,* 1996 SD 71, ¶ 6, 551 N.W.2d 298, 300.

4. I attribute no ill-will to Richmond in denying the constable access to Truesdell. To the contrary, it is clear Richmond thought he was assisting the constable by accepting process on behalf of the incompetent Truesdell. However, on its face at this point the constable had been denied access to Truesdell to complete service with his authority to proceed in question. Logically, he opted for the alternative offered by Richmond, that being leaving the papers with Richmond.

ue, the use of the word "reside" in the statute on substitute service would point to a more general definition, that being where the person "lives" or "stays."

[¶ 22.]SDCL 25–7–5 requires a person to support his or her spouse when "the spouse is unable from infirmity to support himself or herself." This goes farther than mere finances. The fact that Truesdell may have been financially solvent meant little if he was so mentally incompetent that he could not provide for his daily needs. Mrs. Truesdell complied with this statute during her absence by obtaining the services of Richmond to care for Truesdell. As such, Truesdell was "living" or "staying" or "residing" with Richmond at the time of the service. Truesdell clearly was not residing by himself, with his wife or with anyone other than Richmond.

[¶ 23.]In some unique situations, such as this one, it would ignore the purpose of service of process to declare that no valid service exists. In discussing the purpose of substitute service the Supreme Court of Iowa has explained:

> [O]ur statute merely requires that the notice be left 'with some member of the family over 14 years of age' ... and this is made equivalent to actual service, upon the supposition that such person sustains such a relation of confidence to the one sought to be served as that he will be likely to bring the notice to his attention and thereby effect precisely what actual service is intended to accomplish.

*Thompson v. Butler*, 214 Iowa 1123, 243 N.W. 164, 167 (1932) (quoting *Hass v. Leverton*, 128 Iowa 79, 102 N.W. 811, 812 (1905)). The record is clear that Richmond did occupy a special and unique relationship of friendship and confidence with the Truesdells that made it likely, if not certain, that he would bring the summons and complaint to the attention of Mrs. Truesdell and thereby effect what actual service is intended to accomplish, *i.e.*, actual notice of the action filed and an opportunity to respond. *Liberty Mut. Ins. Co. v. Rapton*, 140 Ariz. 60, 680 P.2d 196, 198 (Ariz.Ct.App.1984).

[¶ 24.]As to the relationship between Richmond and the Truesdells, there is no disagreement among the parties that, as a result of his Alzheimer's Disease, Truesdell was incompetent and incapable of handling his own business affairs. Therefore, Mrs. Truesdell handled all of his business affairs through a power of attorney and normally filled the role of care giver. Nevertheless, business necessitated Mrs. Truesdell's periodic travels to Las Vegas and during these trips Mrs. Truesdell would leave Truesdell in Richmond's care. Richmond was more than a domestic servant under the supervision of Mrs. Truesdell. He is repeatedly referred to in the record as a "close friend" of the Truesdells. The record does not indicate whether Richmond was paid for his services as Truesdell's care giver although one might presume he did receive some recompense for his time and effort. Nevertheless, both Mrs. Truesdell's affidavit and Richmond's affidavit strongly suggest that Richmond took care of Truesdell not for monetary gain as a paid employee, but, rather, in his capacity as "a long-time family friend of Defendant Cliff Truesdell ... and his wife, Rosemary[.]" This provides ample evidence of a relationship transcending the normal bounds of a mere employer/employee relationship. Moreover, when the constable served Richmond, Richmond told the constable he had custody of Truesdell, not that he was working for the Truesdells. Again, this reflects Richmond's own view that he was not a mere employee in the Truesdells' home but, rather, that he held responsibility for the temporary care, safety and supervision of Truesdell until Mrs. Truesdell's return. This is clearly indicative of a relationship of confidence and trust that could reasonably assure the constable that the summons and complaint would be brought to the attention of Truesdell's regular care giver, Mrs. Truesdell.

[¶ 25.]Based upon these unique facts, I would hold that Truesdell was residing with Richmond for purposes of SDCL 15–6–4(e) and, therefore, Richmond had authority to accept substitute service of process on Truesdell's behalf under that statute. On that basis, I would conclude that service of process on Richmond was valid and sufficient to vest jurisdiction in the trial court to consider this matter on the merits.