2000 SD 86

**Terry G. LEKANIDIS, Plaintiff and Appellant,**

v.

**Anthony M. BENDETTI, Defendant and Appellee.**

No. 21246.

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided July 5, 2000.

Bruce A. Hubbard of Hansen, Hubbard & Swanson, Sturgis, South Dakota, Attorneys for plaintiff and appellant.

Benjamin J. Eicher of Wallahan & Eicher Rapid City, South Dakota, Attorneys for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Terry Lekanidis (Lekanidis) appeals the dismissal with prejudice of his personal injury action. We affirm.

## FACTS

[¶ 2.] On August 7, 1995, while attending the Sturgis Motorcycle Rally in Sturgis, South Dakota, Anthony Bendetti (Bendetti), a resident of New York, drove his motorcycle out of a parking lot at a high rate of speed and collided with another motorcycle driven by Lekanidis, a resident of West Virginia. Sturgis Police Officer Hardman investigated the incident and prepared an accident report.

[¶ 3.] The accident report listed Bendetti's home address as "RD1 Box 53E. Nassu N.Y." The report further listed the estimated damage to Bendetti's motorcycle as $5,000 and the damage to Lekanidis' motorcycle as approximately $15,000. Hardman also stated in his report the name of each parties' insurer and the corresponding insurance policy number. Neither party required medical attention at the time of the accident and no traffic or criminal citations were written.

[¶ 4.] Approximately two years later, Lekanidis began experiencing neck and back problems which he alleged were the result of his accident with Bendetti. As a result, Lekanidis sought chiropractic treatment in West Virginia for his injuries.

[¶ 5.] On October 7, 1997, Lekanidis retained South Dakota counsel who prepared a summons and complaint.[1] Since Bendetti was not a resident of South Dakota, counsel completed service of process pursuant to SDCL 15–7–6 and SDCL 15–7–7, South Dakota's non-resident motorist statutes, by serving Secretary of State Joyce Hazeltine (Hazeltine) with a copy of the summons and complaint. Hazeltine signed an admission of service acknowledging her receipt of the documents and the required two dollar fee.

[¶ 6.] On October 8, 1997, counsel mailed a copy of the summons and complaint to Bendetti using the address:

Mr. Anthony M. Bendetti

RD1, Box 53E

Nassau, N.Y. 12123

In the belief that the accident report prepared by Officer Hardman misspelled the city name "Nassau" as "Nassu" and contained no zip code, counsel looked up the proper spelling of the city and found the zip code for "Nassau" to include on the mailing. On that same day, counsel executed an affidavit of compliance with SDCL 15–7–7, but did not include it in the mailing to Bendetti.

[¶ 7.] The letter to Bendetti containing the summons and complaint was ultimately returned to sender as "Attempted–Not Known."[2]

[¶ 8.] On April 8, 1998, the summons, complaint, admission of service, and affidavit of compliance were filed with the Meade County Clerk of Courts. The complaint claimed Bendetti was negligent in causing the personal injury of Lekanidis and sought damages in the amount of

---

1. Lekanidis retained this same counsel for this appeal.

2. The parties disputed whether or not the letter was returned "refused" or "attempted-not known." The trial court made a finding

of fact that "[a] fair reading of the 'For reason checked' is either 'Refused' or 'Attempted Not Known.'" (Emphasis in original). It clearly appears to this Court that the check mark is located on the "Attempted–Not Known" line.

$50,000. On April 24, 1998, an affidavit of default was filed and a hearing on the default judgment was scheduled for July 31, 1998. On June 24, 1998, a notice of hearing on the default judgment was mailed to Bendetti at the same address. Once again, the letter was returned "Attempted Not–Known."

[¶ 9.] A default judgment hearing was held on July 31, 1998 and a default judgment in the amount of $310,447.64[3] was entered on August 4, 1998. Notice of entry of default judgment was prepared and mailed to Bendetti on August 7, 1998, at the same address Lekanidis utilized on the prior mailings. As before, this was returned undelivered.

[¶ 10.] After the notice of entry of judgment was returned, counsel for Lekanidis had a "skip trace" done to find Bendetti's address.[4] The trace determined Bendetti's address was "763 Central Nassau Road, East Nassau, New York 12062." This address was also known as "R.R.1 Box 53, East Nassau, New York 12062." On September 22, 1998, counsel prepared another notice of entry of judgment and mailed it to the address found in the trace. The letter was delivered successfully.

[¶ 11.] On October 1, 1998, Bendetti's counsel filed an answer and motion to vacate the default judgment and allow the answer and other relief. A hearing was held before Judge Moses on October 8, 1998. On November 23, 1998, Judge Moses found that service on Bendetti was insufficient and granted Bendetti's motion to vacate and allowed him to file an answer.

[¶ 12.] On December 14, 1998, Bendetti filed a motion to dismiss the action with prejudice, arguing that the statute of limitations had expired. On February 24, 1999, Bendetti filed a "Motion for Summary Judgment, Dismissal and/or Judg-

ment on the Pleadings." Judge Eckrich held motion hearings on February 5 and March 22, 1999. On August 23, 1999, Judge Eckrich ruled that Lekanidis had not complied with SDCL 15–7–7 by failing to "mail the affidavit of compliance or proof of service" to Bendetti. Judge Eckrich also found that Lekanidis had failed to use Bendetti's "last known address" as required by the statute, but instead, utilized his "own last known address" by correcting the spelling of "Nassau" and including a zip code. Finally, because Lekanidis failed to commence this action within the applicable three year statute of limitations period, the action was dismissed with prejudice.

[¶ 13.] Lekanidis appeals, raising the following issue:

1. Whether the trial court erred in dismissing the action with prejudice.

Bendetti filed a notice of review, raising the following issues:

2. Whether the trial court should have only determined whether the complaint should have been dismissed.

3. Whether the trial court erred regarding whether the "last known address" for substituted service of process can be erroneous.

4. Whether the trial court erred in Finding as Fact that the return envelope could be fairly read as being either "refused" or "attempted-not known."

## STANDARD OF REVIEW

[¶ 14.] In the present case, counsel for Bendetti filed motions to dismiss including as grounds for said motion: summary judgment, dismissal and judgment on the pleadings. The trial court, although failing to specify the grounds for the dismissal, could only have granted a motion to

---

3. Despite the complaint seeking only $50,000 in damages, the default damage award consisted of $300,000 in compensatory damages and $10,447.64 in special damages.

4. "Skiptracing" is a "[s]ervice which assists creditors in locating delinquent debtors or persons who have fled to avoid prosecution." Black's Law Dictionary 1387 (6thEd 1990).

dismiss for insufficiency of process under SDCL 15–6–12(b).

[¶ 15.] In reviewing the granting of a motion to dismiss, our standard of review is well settled. We have often stated that " '[o]ur standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?' " *White Eagle v. City of Fort Pierre,* 2000 SD 34, ¶ 4, 606 N.W.2d 926, 928 (quoting *Risse v. Meeks,* 1998 SD 112, ¶ 10, 585 N.W.2d 875, 876 (quotation omitted)). Further, because the issue of the validity of service of process is a question of law, "we review the trial court's decision de novo, with no deference given to the trial court's legal conclusions." *Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 6, 592 N.W.2d 596, 598 (citing *Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390 (citing *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771)).

[¶ 16.] This case also requires us to apply our rules of statutory construction to South Dakota's nonresident motorist statute, which is set forth under SDCL 15–7–6. We have often stated,

[q]uestions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the court thinks it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must

be determined from the statute as a whole, as well as enactments relating to the same subject.

*Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citation omitted)).

## DECISION

[¶ 17.] **1. Whether the trial court erred in dismissing the action with prejudice.**

[¶ 18.] Under South Dakota law,

[t]he use and operation by a resident of this state or his agent, or by a nonresident or his agent of a motor vehicle within the state of South Dakota, shall be deemed an irrevocable appointment ... by such nonresident or his agent at any time, of the secretary of state of South Dakota to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him or his executor, administrator or personal representative growing out of such use and operation of a motor vehicle within this state, resulting in damages or loss to person or property, whether the damage or loss occurs on a highway or on abutting public or private property.... Such use or operation of a motor vehicle by such ... nonresident is a signification of his agreement that any such process in any action against him or his executor, administrator, or personal representative which is so served, shall be of the same legal force and validity as if served upon him personally or on his executor, administrator, or personal representative.

SDCL 15–7–6 (1984). Under this statute, if a nonresident causes any damage as a result of operating his or her motor vehicle in South Dakota, the damaged party can serve all legal documents on the South Dakota Secretary of State. *See id.*

[¶ 19.] The process of serving the documents on the Secretary of State is gov-

erned by SDCL 15–7–7. The statute provides:

> Service of process as authorized by § 15–7–6 shall be made by serving a copy thereof upon the secretary of state, or by filing such copy in the office of said secretary of state, together with payment of a fee of two dollars, and such service shall be sufficient service upon the ... nonresident or his executor, administrator, or personal representative; provided that *notice of such service and a copy of the process are within ten days thereafter sent by mail by the plaintiff to the defendant at his last-known address and that the plaintiff's affidavit of compliance with the provisions of this section is attached to the summons.* The secretary of state shall keep a record of all such process so served which shall show the day and hour of such service. The fee of two dollars paid by the plaintiff to the secretary of state at the time of service of process shall be taxed in his cost if he prevails in the suit.

SDCL 15–7–7 (1984) (emphasis added). The statute requires that for valid service of process under the nonresident motorist statute, the party shall (1) file a copy of the process on the secretary of state or the office of the secretary of state; (2) pay a two dollar fee; and (3) mail a copy of the notice of service, the affidavit of compliance attached to the summons, and copy of the process to the defendant's "last-known address" within ten days of service on the secretary of state. *See id.*

■ [¶ 20.] In the present case, there is no dispute that Lekanidis failed to attach the affidavit of compliance to the summons before mailing it to Bendetti, or that he failed to send the legal documents to Ben-

detti's "last known address." The court concluded that these omissions constituted a failure to comply with SDCL 15–7–7.[5]

[¶ 21.] Lekanidis contends that he *"substantially complied"* with the requirements of SDCL 15–7–7, therefore, the service of process should have been held valid. The only support Lekanidis cites for his argument is *Wagner v. Truesdell,* 1998 SD 9, 574 N.W.2d 627. In *Wagner,* this Court dealt with the plaintiff's substantial compliance with SDCL 15–6–4(d)(10), a statute which governs service of process to the "defendant personally." *Id.* ¶ 6, 574 N.W.2d at 629.

[¶ 22.] We find Lekanidis' reliance on *Wagner* misplaced. The present case is not a "personal service" of process case, but rather, involves "substituted service" of process. Despite the fact that we have allowed "substantial compliance" with personal service of process statutes as in *Wagner,* we have never previously addressed this issue in regards to "substituted service" cases such as this. The Eighth Circuit Court of Appeals case of *Marshall v. Warwick,* 155 F.3d 1027 (8th Cir.1998) involved a substituted service dispute.

[¶ 23.] In *Marshall,* the court was faced with substituted service of process under South Dakota law where the trial court had granted a motion for dismissal. On appeal, Marshall contended that there was substantial compliance "with the requirements of substituted service" under SDCL 15–6–4(e). 155 F.3d at 1030. In support of her argument, as Lekanidis does in the present case, Marshall cited to *Wagner* as authority for her "substantial compliance" argument. *Id.* The Eighth Circuit Court noted that "while it is clear from *Wagner* that the South Dakota Supreme Court has adopted the substantial compliance stan-

---

5. The trial court further held,
   [Lekanidis] did not use the address on the report whether supplied by [Bendetti] or not. The report address was an error – but the Defendant [sic] affirmatively compounded the error by independently determining the and [sic] erroneously determining that "Nassu" meant Nassau and [Lekanidis] supplied the (erroneous) zip code. [Lekanidis] did not rely on the erroneous "last known address" – Which [Lekanidis] must have known was erroneous because he did not use the address supplied by the report. –He supplied his own last known address. (Emphasis in original.)

dard for *personal* service of process, it is not clear that the South Dakota Supreme Court would extend the substantial compliance standard to *substituted* service of process." *Id.* (emphasis in original). The court further opined:

> Moreover, there are several compelling reasons to limit the application of the substantial compliance standard to personal service of process. In cases of personal service of process, a court can be reasonably certain that the defendant had notice of the impending suit because the defendant was present for the service. Substituted service of process, in contrast, carries the risk that the defendant never received notice. Allowing only substantial compliance with the requirements for substituted service of process further increases the risk involving an unsuspecting defendant in a lawsuit about which the defendant did not have notice. Arguably, *only strict compliance with the requirements of substituted service of process will sufficiently reduce this risk.*

*Id.* at 1031 (emphasis added).

▮ [¶ 24.] Other jurisdictions have also held that strict compliance is required when dealing with "substituted service." *See, e.g., Messmer v. Olstad,* 529 N.W.2d 873, 875–76 (N.D.1995) (addressing a non-resident motorist statute and holding that "[w]hen a statute sets out requirements for making service, parties must strictly comply with the provisions authorizing and permitting such service"); *Wood v. Martin,* 328 N.W.2d 723, 726 (Minn.1983) (noting that there had "not been strict compliance with the [nonresident motorist] statute as required by our case law"); *Wilson v. Smith,* 193 Neb. 433, 227 N.W.2d 597, 598 (1975) (concluding that the plaintiff did not strictly comply with the requirements of the nonresident motorist statute); *Jenkins v. Hill,* 240 Ark. 197, 398 S.W.2d 679, 682 (1966) (emphasizing that the nonresident motorist statute "must be strictly construed"). We hold that substituted service must be made in strict compliance with the statute to ensure that the defendant will receive notice of the action.

[¶ 25.] We must now turn to whether Lekanidis failed to "strictly comply" with the statute by not attaching the affidavit of compliance to the original documents sent to Bendetti and by not sending the documents to Bendetti's "last known address."

### Failure to Attach Affidavit of Compliance with Mailings to Bendetti

▮ [¶ 26.] Under SDCL 15-7-7, the plaintiff is required to send "notice of such service and a copy of the process" within ten days to the defendant and "that plaintiff's *affidavit of compliance* with the provisions of this section *is attached to the summons.*" (Emphasis added). The statute clearly and unambiguously requires the affidavit of compliance be attached to the summons and mailed to the defendant along with the notice of service and copy of process. Lekanidis failed to attach the affidavit of compliance with his mailings to Bendetti; therefore, he has failed to strictly comply with SDCL 15-7-7.

### The "Last Known Address" Requirement

▮ [¶ 27.] As previously noted, the trial court also dismissed Lekanidis' action based upon his failure to use the "last known address" of Bendetti, but instead, "supplied his own last known address" by correcting the spelling of "Nassau" and providing a zip code.

[¶ 28.] Lekanidis argues that Bendetti was at fault in providing the incorrect address to Officer Hardman and Lekanidis should not be punished for the fault of Bendetti in not clearly providing his correct address to Officer Hardman. Lekanidis contends that the last known address "was the address on the police report, whether correct or incorrect," and he did in fact mail to the address on that report. Lekanidis' sole support for his argument is *Dahn,* 1998 SD 36, 576 N.W.2d 535.

[¶ 29.] In *Dahn*, this Court was faced with a tax deed sale of realty and the subsequent mailing of a written tax bill to the taxpayer's last known address. *Id.* ¶ 3, 576 N.W.2d at 537. The county treasurer had utilized Trownsell's address which was on file with the county as the last known address to which to mail Trownsell's "Notice to Take a Tax Deed." *Id.* The issue before this Court was to interpret the meaning of "last known address" and determine whether Dahn complied with that requirement. *Id.* ¶ 17, 576 N.W.2d at 539. Lekanidis argues that *Dahn* applies because there we noted the plaintiff's reliance upon the address in the records of the county treasurer constituted compliance with the meaning of "last known address," therefore, Dahn did not have to conduct any further independent inquiry to determine Trownsell's correct current address. While we agree with Lekanidis' interpretation of our holding in *Dahn*, we do not agree that it is controlling in this case. In the present case, Lekanidis did not rely on the accident report, but rather, attempted further investigation to determine the correct spelling of the city name and located the zip code for Nassau, New York.

[¶ 30.] Bendetti argues that use of an incorrect address by Lekanidis does not satisfy the statutory requirement of mailing to the defendant's "last known address." Bendetti argues that Lekanidis should have taken other measures to assure service of notice after receiving the letters back marked "Address–Not Known." In support of his argument, Bendetti cites *Permenter v. Feurtado*, 541 So.2d 1331 (Fla.Dist.Ct.App.1989).

[¶ 31.] In *Permenter*, Feurtado filed suit against Permenter, a Michigan resident, for damages sustained in an automobile accident in Florida. 541 So.2d at 1332. The accident report contained Permenter's Michigan address which was utilized by Feurtado to mail service of process to Permenter. The service was returned undeliverable, yet Feurtado moved for and

was granted a default judgment. On appeal, the Florida Court of Appeals vacated the default judgment and held that "the record reveals a complete absence of diligence on the part of plaintiffs' counsel in perfecting service of process" pursuant to Florida statutes. *Id.* The court further held that "[i]t was incumbent upon the plaintiffs to diligently seek out the proper address of the defendant[.]" *Id.*

[¶ 32.] Lekanidis further contends that our decision in *Dahn* eliminates any duty on Lekanidis to make an independent inquiry into Bendetti's correct address. In *Dahn*, we noted that a holder of a tax deed could reasonably rely on the last known address of the property owner which was contained in the records of the county treasurer and was not required to make independent inquiry to determine the correct address of the property owner because the property owner had a duty to insure that his address on file with the county was correct. *See Dahn*, 1998 SD 36, ¶ 24, 576 N.W.2d at 542. Therefore, any duty was on the property owner, not the tax deed holder. *See id.* This case is not applicable to the present situation because, unlike *Dahn*, where a plaintiff has knowledge that the address to which they are mailing may not be the correct address for the defendant, they cannot blindly turn away and immediately run to court and get a default judgment. Such conduct would violate the purpose of the service of process, which is to provide notice to the defendant of the impending lawsuit. In this case, Lekanidis discovered that the address provided on the accident report was invalid due to the misspelling of the city name and lack of zip code. Lekanidis also received several mailings returned "Address–Not Known." Clearly Lekanidis had knowledge that this address was not Bendetti's correct address. It certainly did not take Lekanidis long to find the correct address once the default judgment was entered. With only minor effort and diligence, Lekanidis could have discovered the correct address of Bendetti. He could

 

have utilized the "skip trace" or the name of Bendetti's insurance company and policy number listed on the accident report to locate his current address long before seeking a default judgment. Based upon this lack of diligence, Lekanidis has failed to show that he strictly complied with the requirement under SDCL 15–7–7 by mailing all legal documents to defendant's "last known address."

[¶ 33.] We have often stated that " '[w]ithout valid service of process the trial court has no jurisdiction to act.' " *Wagner*, 1998 SD 9, ¶ 17, 574 N.W.2d at 631 (quotations omitted) (Gilbertson, J., concurring in result). Due to invalid service of process on Bendetti by Lekanidis, the trial court had no jurisdiction to hear the case and properly dismissed the action. *See, e.g., Nolan v. Nolan*, 490 N.W.2d 517, 521 (S.D.1992) (noting that because the service of process was invalid, "the decree was void ab initio and the trial court had no alternative but to vacate the decree").

[¶ 34.] It is well settled that "an action is commenced in this jurisdiction by the service of a summons" on the defendant. *See Meisel v. Piggly Wiggly Corp.*, 418 N.W.2d 321, 323 (S.D.1988) (citing SDCL 15–2–30). The applicable statute of limitations in this case is SDCL 15–2–14. The statute requires that for "[a]n action for personal injury," the civil action "can be commenced only within three years after the cause of action shall have accrued." The motorcycle accident occurred on August 7, 1995 and the case was not dismissed until December 3, 1998. By the time of the dismissal, the statute of limitations had since expired. Due to the invalid service of process on Bendetti, Lekanidis did not commence his personal action within the applicable three year statute of limitations; therefore, Lekanidis' claim against Bendetti is now barred and the action was properly dismissed with prejudice.

[¶ 35.] Based upon our disposition of this issue, we need not address the issues contained in Bendetti's notice of review.

[¶ 36.] We affirm.

[¶ 37.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 38.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 39.] I agree that due diligence must be used to obtain a correct last known address when presented with a facially incomplete or inaccurate address.

[¶ 40.] This case is a good reminder to do things as soon, not as late, as possible, especially when flawed or defective in procedures. Had counsel erred earlier, he could have corrected his mistakes before the statute of limitation ran.