2002 SD 43

**Darrell D. SPADE and Michelle Spade, Plaintiffs and Appellants,**

v.

**Matthew BRANUM, Defendant and Appellee.**

**No. 22051.**

Supreme Court of South Dakota.

Argued Feb. 13, 2002.

Decided April 17, 2002.

Melissa B. Nicholson, Thomas J. Nicholson of Johnson, Eklund, Nicholson & Peterson Sioux Falls, South Dakota, Attorneys for plaintiffs and appellants.

Paul T. Barnett of Siegel, Barnett & Schutz, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In a case apparently requiring service by publication, can the summons be published without first obtaining a court order granting permission to do so? The circuit court ruled in the negative and dismissed the suit for invalid service. We affirm because service by publication requires strict compliance with statutory mandates, and a court order is an indispensable prerequisite to proper service by publication.

### Background

[¶ 2.] This is a personal injury action arising from an automobile accident in Sioux Falls, South Dakota, on December 24, 1997. Plaintiffs Darrell and Michelle Spade (the Spades) sought compensation from the insurer of the other driver, Matthew Branum. Unable to arrive at a satis-

factory resolution with Branum's insurer, the Spades' attorney prepared to sue.

[¶3.] On December 13, 2000, eleven days before the statute of limitations on their action would expire, the Spades' attorney filed a summons and complaint with the Minnehaha County Clerk of Courts. He also sent copies of these to Branum's insurer, with whom he had been corresponding for over two years. On the same date, the summons and complaint were delivered to the Minnehaha County Sheriff for service on Branum. Branum's address was listed on the accident report. Some days later, the Spades' attorney received a sheriff's return, indicating that a deputy sheriff had attempted to serve process on Branum, but was "unable to locate" him because he was "avoiding service." On that date and at least on one other occasion, on January 5, 2001, a deputy left a notice at Branum's front door, requesting that he "contact the Civil Section at the Minnehaha County Sheriff's Department."

[¶4.] According to Branum's affidavit, he had a night job and slept during the day; therefore, he would not have heard someone knocking at his front door. Furthermore, he seldom used that door, he claimed, and thus he did not see the notices right away. Branum acknowledged, however, that he had some parking citations outstanding at the time, so when he eventually found the notices, he assumed they referred to his parking violations. Meanwhile, he learned from his attorney no later than January 2, 2001, that a lawsuit against him was imminent. Branum's attorney knew of the lawsuit because he received copies of the summons and complaint from Branum's insurer. Even so, Branum ignored the notices until January 26, 2001, when he went to the Sheriff's office. On that occasion, personnel at the Sheriff's office were unable to locate the summons and complaint.

[¶5.] On January 30, 2001, Branum's attorney wrote to the Spades' attorney, advising that Branum had attempted to obtain the summons and complaint from the Sheriff's office and that he believed "Branum would probably be willing to make one more trip to pick them up," provided the Spades' attorney saw to it that the papers were in fact "return[ed.]" Nevertheless, apparently believing that further attempts to effect personal service on Branum would be fruitless, counsel for the Spades resorted to service by publication, arranging to have the summons printed in the Sioux Falls Argus Leader. The summons ran in the Argus from February 6, 2001 to February 27, 2001. Counsel did not seek or obtain a court order allowing for service by publication.

[¶6.] Defendant Branum moved to dismiss for insufficient service of process. After a hearing, the court granted the motion. The dismissal was with prejudice because the three-year period allowed for filing a personal injury suit under SDCL 15–2–14 had elapsed. However, the property damage claim was dismissed without prejudice. On appeal, plaintiffs assert the following issues: (1) "Plaintiff's actions constitute valid service of process, pursuant to SDCL § 15–2–31 and § 15–9–7." (2) "Plaintiffs have met the requirements to receive an order for service by publication, although they dispute South Dakota Codified Law requires an order in this scenario." (3) "Even if the court finds that an order for publication is required, plaintiffs have substantially complied with the spirit and essence of the publication statutes." (4) "Since defendant and defendant's attorney had actual knowledge of the plaintiffs' efforts to commence a lawsuit, substantial compliance with the statutes [is] sufficient to justify effective service of process; defendant should be estopped from now com-

plaining of insufficient service by his own actions and by his attorney's words and actions." On review, we combine these issues to ask, can plaintiffs publish their summons without first obtaining a court order granting permission to do so, and if not, will substantial compliance excuse improper service? [1]

### Analysis and Decision

[¶ 7.] Proper service of process is no mere technicality: that parties be notified of proceedings against them affecting their legal interests is a "vital corollary" to due process and the right to be heard. *Schroeder v. City of New York*, 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, 259 (1962) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)). "This right ... has little reality or worth unless one is informed that the matter is pending and can choose for [oneself] whether to appear or default, acquiesce or contest." *Id.* Thus, the purpose of service of process is twofold: first, to advise that a legal proceeding has been commenced, and, second, to warn those affected to appear and respond to the claim. *Wagner v. Truesdell*, 1998 SD 9, ¶ 8, 574 N.W.2d 627, 629 (internal citation omitted).

[¶ 8.] South Dakota statutes specify the means of ensuring proper service. SDCL 15–6–4 details in its eleven subsections how a summons is to be served upon various kinds of defendants. In our case, SDCL 15–6–4(10) applies: "The summons shall be served by delivering a copy thereof ... to the defendant personally." There may, of course, be circumstances in which it is impossible for a plaintiff to serve process on a defendant personally. In some instances, substantial compliance with the requirements of personal service will be adequate. *See Wagner*, 1998 SD 9, 574 N.W.2d 627.

[¶ 9.] In other circumstances, however, only strict compliance will suffice. One type of service that would seem to require strict compliance is service by publication. This type of service is probably the least reliable method of assuring adequate notice of a pending lawsuit. Nonetheless, the Spades argue that *Wagner* serves as precedent for the legal sufficiency of their service by publication on Branum. *Wagner* applied substantial compliance in a personal service case when actual service on the party would have been a useless act. In that case, the party to be served was incompetent, and service was made in his presence upon his caretaker. In every other circumstance, we have held that "substituted service must be made in strict compliance with the statute to ensure that the defendant will receive notice of the action." *Lekanidis*, 2000 SD 86 at ¶ 24, 613 N.W.2d 542.[2] It remains, then, to decide whether the Spades strictly complied with the requirements for service by publication.

[¶ 10.] SDCL 19–9–7 provides:

A summons, writ, order, or decree may be served by publication under the conditions and in the manner provided hereinafter and in §§ 15–9–8 to 15–9–21 inclusive.

---

1. We review a circuit court's order of dismissal de novo. *Lekanidis v. Bendetti*, 2000 SD 86, ¶ 15, 613 N.W.2d 542, 545 (citations omitted). We also review issues on the validity of service of process as a question of law. *Id.* (citations omitted).

2. Since *Lekanidis*, a number of other jurisdictions have also held that strict compliance is necessary in cases of substituted service. *See Jennings v. Montenegro*, 792 So.2d 1258 (Fla. Dist.Ct.App.2001); *Lewis v. Ramirez*, 49 S.W.3d 561 (Tex.App.2001); *Mugavero v. Kenzler*, 317 Ill.App.3d 162, 251 Ill.Dec. 46, 739 N.E.2d 979 (2000).

Where the person upon whom the service of the summons, writ, order, or decree is to be made cannot, after due diligence, be found within the state and [where] that fact appears by affidavit to the satisfaction of the court or a judge thereof, and it in like manner appears that a cause of action exists against the defendant in respect to whom the service is to be made or that he is a proper party in this state, or to the writ, order, or decree, such court or judge may grant an order that the service be made by publication of the summons in any of the cases described in §§ 15–9–8 to 15–9–15 inclusive.

Furthermore, SDCL 15–2–31 provides:

An attempt to commence an action is deemed equivalent to the commencement thereof when the summons is delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendants, or one of them, usually or last resided.... Such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days.

The Spades argue that the latter statute mandates service by publication, and thus no court order was necessary before publishing their summons. They urge that, after the sheriff first attempted to serve Branum, they were required by § 15–2–31 to publish the summons within sixty days and that, by doing so, they properly effected service on Branum.

[¶ 11.] South Dakota's statutory scheme governing service of process must be contemplated in concert, not as a set of unrelated pronouncements. The great importance of proper service of process is safeguarded by the requirement that, in a case where a defendant cannot be found, a court must be satisfied, before it exercises its discretion to order service by publication, that a plaintiff has used due diligence in the attempt to locate and personally serve a defendant. The alternative urged by the Spades would be tantamount to licensing parties to decide for themselves whether they had exercised due diligence.

[¶ 12.] Furthermore, "[s]ervice by publication is not available in all civil cases, but may be used in the actions and circumstances specifically described in SDCL 15–9–8 to 15–9–15, inclusive." *Openhowski v. Mahone*, 2000 SD 76, ¶ 17, 612 N.W.2d 579, 583. The Spades claim that no statute explicitly provides that, in a personal injury case, service by publication without a court order is invalid. However, SDCL 15–9–13 states, in pertinent part, that "[t]he court or a judge thereof may grant an order pursuant to § 15–9–7 where the defendant, being a resident of this state ... keeps himself concealed therein" with intent to avoid service. The Spades could have presented to a court their evidence that Branum was intentionally avoiding service, and, had it found the evidence persuasive, the court could have issued an order for service by publication.

[¶ 13.] To argue, as the Spades do, that their service-by-publication on Branum was valid because no statute renders such service invalid or because a court would have granted an order for publication in any event, is to turn the prerequisite of a court finding of due diligence on its head. As explained above, proper service of process is fundamental to our constitutional scheme, and it is clear that service by publication is a second-best remedy, resort to which a court will allow only when the defendant cannot be served personally. Plaintiffs are required to show, to the satisfaction of a court, that personal service is impossible, and, even then, service by publication is allowed only "in the actions and circumstances specifically described in SDCL 15–9–9 to 15–9–15, inclusive."

[¶ 14.] Because the Spades did not seek a court order allowing service by publica-

tion, their service upon Branum by publication was insufficient as a matter of law. Therefore, the trial court's order of dismissal was correct. Accordingly, we do not reach the question whether the Spades exercised due diligence, for that question arises only in the context of a circuit court's determining whether an order allowing service by publication should issue. Since the trial court was not called upon before publication to consider whether it was proper for such an order to issue, the question of due diligence was not before it and cannot, therefore, be before us.

[¶ 15.]   Affirmed.

[¶ 16.]   SABERS, and AMUNDSON, Justices, and GORS, Acting Justice, concur.

[¶ 17.]   GILBERTSON, Chief Justice, concurs in result.

[¶ 18.]   ZINTER, Justice, not having been a member of the Court at the time this action was submitted, did not participate.

GILBERTSON, Chief Justice (concurring in result).

[¶ 19.]   "An advocacy of the doctrine of substantial compliance finds absolutely no support in our statutes concerning service of process." *Wagner v. Truesdell,* 1998 SD 9, ¶ 17, 574 N.W.2d 627, 630 (Gilbertson, J., dissenting). As such, it is not even a valid argument by Spade to avoid the result reached by this Court herein. Therefore, I concur in result only.