#26414, #26419-aff in pt, rev in pt & rem-GAS
**2013 S.D. 54**

## IN THE SUPREME COURT
## OF THE
## STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| JAS ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION, | Plaintiff and Appellant, |
| v. | |
| BBS ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION, BRADLEY STATON, BRIAN STATON, and DANIEL STATON, | Defendants, Third Party Plaintiffs and Appellees, |
| v. | |
| JAS ENTERPRISES, INC., A SOUTH DAKOTA CORPORATION, and JAMES SWABY, | Third Party Defendants and Appellants. |

\* \* \* \*

## APPEAL FROM THE CIRCUIT COURT OF
## THE SEVENTH JUDICIAL CIRCUIT
## PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

## THE HONORABLE JEFF W. DAVIS
### Judge
\* \* \* \*

| | |
|---|---|
| JOHN K. NOONEY ROBERT J. GALBRAITH of Nooney Solay & Van Norman, LLP Rapid City, South Dakota | Attorneys for plaintiff, third party defendants and appellants. |
| STEVEN C. BEARDSLEY MICHAEL S. BEARDSLEY of Beardsley Jensen & Von Wald, Prof. LLC Rapid City, South Dakota | Attorneys for defendants, third party plaintiffs and appellees. |

\* \* \* \*

ARGUED FEBRUARY 12, 2013
OPINION FILED **07/17/13**

SEVERSON, Justice

[¶1.] On January 27, 2000, JAS Enterprises, Inc. (JAS) entered into a purchase agreement with BBS Enterprises, Inc. (BBS), which Bradley, Brian, and Daniel Staton signed as personal guarantors. JAS sued BBS and the Statons for breach of contract in February 2004. BBS and the Statons filed an answer and counterclaim. A trial was held in March 2012, resulting in a judgment of $100,000 for BBS and the Statons and a judgment of $67,000 for JAS.

## BACKGROUND

[¶2.] James Swaby is the principal shareholder of a company called Equipment Service Professionals, Inc. (ESP), which installs and services a variety of heating, air conditioning, and refrigeration systems, including ductwork, in commercial and residential buildings. ESP operates out of two offices in South Dakota, one in Rapid City and one in Spearfish. The Rapid City office is incorporated as JAS Enterprises, Inc. (JAS), but it does business as ESP. Swaby is also the principal shareholder of JAS.

[¶3.] Bradley and Brian Staton worked at ESP, installing sheet metal or ductwork, and associated heating and air conditioning systems. Bradley began working for ESP in 1992 and his brother, Brian, began working for ESP in 1993. Both Statons began working for ESP out of the Spearfish office, but eventually transferred to the Rapid City office. In 1999, Swaby and the Statons began discussing whether the Statons were interested in purchasing the sheet metal

installation portion of the business.[1]  In November and December of 1999, the Statons worked with an accounting firm in Rapid City to develop a business plan and created a corporation called BBS Enterprises, Inc. (BBS) to purchase the sheet metal installation portion of the business.

[¶4.]        On January 27, 2000, BBS entered into a purchase agreement with JAS only.  Bradley, Brian, and Daniel Staton, Bradley and Brian's father, signed the purchase agreement as personal guarantors of the agreement.  The purchase agreement sold the vehicles, equipment, and inventory used in ESP's sheet metal installation business.  The purchase agreement also sold JAS's goodwill related to the sheet metal business and contained a covenant not to compete, prohibiting JAS from working in the sheet metal installation business for seven years within a one hundred mile radius of Rapid City.[2]  The total purchase price was $245,000, which

---

1.    The parties dispute whether the "sheet metal installation" portion of the business included only the sheet metal installation or the installation of sheet metal and heating and air conditioning units.  The purchase agreement used the phrase "sheet metal installation."

2.    The text of the covenant not to compete, identifying JAS Enterprises, Inc. as the Seller, states:

> Recognizing Buyer's need to protect their legitimate interest and goodwill, and in the furtherance of the sale of the business assets which includes the goodwill of the business being sold to Buyer, Seller agrees that for a period of seven (7) years following the Closing Date, Seller shall not alone or in combination with others, directly or indirectly, and whether acting as a principal, agent, employee, shareholder, director, partner or otherwise carry on, or be engaged in, or connected with, the sheet metal installation business within a geographical area of a one hundred (100) mile radius of Rapid City, South Dakota.

included $20,000 for the covenant not to compete and $58,000 for the goodwill of the business.

[¶5.] At the same time, BBS entered into a business consultant agreement with Swaby and an independent contractor's agreement with JAS for bookkeeping and secretarial services. BBS agreed to pay Swaby $1,250 per month for consulting and $2,135 per month to JAS for bookkeeping and secretarial services.

[¶6.] After signing the agreements at the end of January 2000, BBS began operating as Advance Heating and Air Conditioning. As early as March 2000, BBS had trouble making timely monthly payments under the purchase agreement. At various times over the next few years, ESP and JAS lent or advanced money to BBS to help BBS complete various projects.

[¶7.] In February 2004, JAS filed suit against BBS and the Statons alleging breach of contract on the purchase agreement. BBS and the Statons filed an answer and counterclaim, arguing that (1) JAS and Swaby personally breached the covenant not to compete, and (2) JAS and Swaby personally defrauded BBS and the Statons. The Statons eventually identified seven different heating and air conditioning installation projects that they alleged Swaby, JAS, or ESP worked on in violation of the covenant not to compete.

[¶8.] A jury trial was held from March 28 through 30, 2012. At the close of the trial, the jury found that the parties mutually assented to the essential terms of the contract; that BBS and the Statons breached their obligation to JAS to make payments as required by the purchase agreement; that JAS and Swaby breached the covenant not to compete; that Swaby failed to give preference to BBS and the

Statons by competing against them in the sheet metal installation business; and that JAS and Swaby did not commit fraud or deceit. The jury awarded $67,000 to JAS and Swaby for breach of the purchase agreement and $100,000 to BBS and the Statons for breach of the covenant not to compete.

[¶9.] JAS and Swaby appeal the following issues: (1) whether BBS and Statons' counterclaim against Swaby personally should have been dismissed based on a failure to obtain jurisdiction because a summons was never served on Swaby personally and he was not identified as a third-party defendant; (2) whether the trial court erred as a matter of law when it denied JAS's motion for partial summary judgment on the separate claims of fraud or deceit; and (3) whether the trial court abused its discretion by admitting testimony from various witnesses at trial.

[¶10.] BBS and the Statons appeal the following issues: (1) whether the trial court erred in denying BBS and Statons' motion for partial summary judgment on the violation of the covenant not to compete and motion for directed verdict on the covenant not to compete; (2) whether the trial court erred in denying prejudgment interest to BBS and Statons; and (3) whether the trial court erred in answering a question from the jury without giving either party notice or an opportunity to be heard.

## DISCUSSION

[¶11.] **(1) Whether BBS and Statons' counterclaim against Swaby personally should have been dismissed based on a failure to obtain jurisdiction because a summons was never served on Swaby personally as a third-party defendant.**

-4-

[¶12.]     "'When a [third-party] defendant moves to dismiss for insufficient service of process, the burden is on the [third-party] plaintiff to establish a prima facie case that the service was proper.'" *R.B.O. v. Priests of the Sacred Heart*, 2011 S.D. 86, ¶ 7, 807 N.W.2d 808, 810 (quoting *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 22, 717 N.W.2d 624, 631).  "Whether a [third-party] plaintiff has presented a prima facie case of sufficient service of process is reviewed by this Court de novo, with no deference given to the circuit court's legal conclusions." *Id.* (citing *Grajczyk*, 2006 S.D. 55, ¶ 22, 717 N.W.2d at 631).

[¶13.]     "We have recognized that 'proper service of process is no mere technicality: that parties be notified of proceedings against them affecting their legal interests is a "vital corollary" to due process and the right to be heard.'" *R.B.O.*, 2011 S.D. 86, ¶ 9, 807 N.W.2d at 810 (quoting *Spade v. Branum*, 2002 S.D. 43, ¶ 7, 643 N.W.2d 765, 768) (citations omitted).  Service of process advises a party that "'a legal proceeding has been commenced'" and warns "'those affected to appear and respond to the claim.'" *Id.* (quoting *Spade*, 2002 S.D. 43, ¶ 7, 643 N.W.2d at 768).  South Dakota statutes allow a defendant to bring a claim against a third-party that is not a party to the original action.  SDCL 15-6-14(a).  SDCL 15-6-14(a) provides, in part:

> At any time after commencement of the action *a defending party*, as a third-party plaintiff, *may cause a summons and complaint to be served upon a person not a party to the action* who is or may be liable to him for all or part of the plaintiff's claim against him.

(Emphasis added.)  If the third-party plaintiff serves the third-party complaint within ten days of serving the original answer, the third-party plaintiff does not

need the court's permission to make a third-party complaint. *Id.* However, if the third-party plaintiff does not serve the complaint within ten days, the third-party plaintiff "must obtain leave on motion upon notice to all parties to the action." *Id.* If a plaintiff is suing a defendant personally, the summons must be delivered to the defendant personally. SDCL 15-6-4(d)(8). If, as in this case, a third-party plaintiff is suing a third-party defendant personally, the summons should be served on the third-party defendant personally. *See id.*

[¶14.]       Here, BBS and the Statons argue that they substantially complied with the service of process so as to provide actual notice to Swaby via his attorney that Swaby personally was being sued. In *Wagner v. Truesdell*, we defined substantial compliance as:

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

1998 S.D. 9, ¶ 7, 574 N.W.2d 627, 629 (quoting *State v. Bunnell,* 324 N.W.2d 418, 420 (S.D. 1982) (internal citations and quotation marks omitted)). As we noted in *R.B.O.*, "'[a]ctual notice will not subject [third-party] defendants to personal jurisdiction absent *substantial compliance* with' the governing service-of-process statute." 2011 S.D. 86, ¶ 17, 807 N.W.2d at 813 (quoting *Wagner*, 1998 S.D. 9, ¶ 9, 574 N.W.2d at 629).

[¶15.] After JAS initiated this suit in 2004, BBS and the Statons filed an answer and counterclaim with a certificate of service stating that the answer and counterclaim were served on JAS's attorney. Over three years later, BBS and the Statons filed a summons requiring an answer to the answer and counterclaim. But the summons did not state that Swaby was being sued personally and was not delivered to Swaby. Finally, although an affidavit of service was filed stating that Swaby was served the answer and counterclaim on April 26, 2007, Swaby was not personally identified as a third-party defendant in the caption of the affidavit of service or in the caption of the answer and counterclaim. Further, the affidavit of service stated that an answer and counterclaim were served, but did not list a summons as being served on Swaby.

[¶16.] BBS and the Statons, as third-party plaintiffs, did not serve a summons and complaint within ten days of their answer. They did not obtain the leave of the court to file a summons and complaint after the ten-day period expired. They failed to serve Swaby personally with a summons and complaint at any point. If BBS and the Statons meant to sue Swaby personally, they were required to actually identify and properly serve Swaby. In this case, Swaby's ownership of JAS and process served on JAS does not substantially comply with personal service on Swaby. BBS and the Statons failed to follow the procedures set out in SDCL 15-6-14(a), and thus, the trial court should have granted the motion to dismiss the counterclaim against Swaby personally.

[¶17.] In addition, if BBS and the Statons meant to assert a claim to pierce the corporate veil of JAS to attach liability to Swaby, they should have made such a

claim.[3] Swaby did not waive service of process under SDCL 15-6-12(h) because he

was never personally served with a third-party summons and complaint, and

because he was never served, Swaby is not party to this lawsuit. The trial court

erred when it denied Swaby's motion to dismiss him personally.

[¶18.] **(2) Whether the trial court erred as a matter of law when it denied JAS's motion for partial summary judgment on the separate claims of fraud or deceit.**

---

3. Our review of the record reveals that at a motions hearing prior to trial, the trial court made the following statement regarding piercing the corporate veil:

> You know, and, frankly to the plaintiff all this stuff about JAS being one and ESP being another and then Swaby being separate ain't going to fly either. I mean, GM can hide behind a corporate veil. Small, closely held corporations cannot and I won't let it happen here so don't even argue, other than to make your record so you have it for appeal purposes.

However, we have consistently held that "[t]he general rule is that the corporation is looked upon as a separate legal entity until there is sufficient reason to the contrary." *Mobridge Cmty. Indus., Inc. v. Toure, Ltd.*, 273 N.W.2d 128, 132 (S.D. 1978). The corporate veil may be pierced "when retention of the corporate fiction would 'produce injustices and inequitable consequences.'" *Id.* (quoting *Hayes v. Sanitary & Improvement Dist. No. 194*, 244 N.W.2d 505, 511 (Neb. 1976)). There are a number of factors that may justify piercing the corporate veil, including: "(1) fraudulent misrepresentation by corporation directors; (2) undercapitalization; (3) failure to observe corporate formalities; (4) absence of corporate records; (5) payment by the corporation of individual obligations; and (6) use of the corporation to promote fraud, injustice or illegality." *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 n.6 (S.D. 1994). We also developed and discussed a two-part test to evaluate when piercing the corporate veil is appropriate. *See id.* at 107.

In addition, we have specifically addressed the separate nature of Swaby, ESP, and JAS in another case. *See Equip. Serv. Prof'ls, Inc. v. Denowh*, 2005 S.D. 20, 693 N.W.2d 54.

[¶19.]     JAS appeals the trial court's decision to deny its motion for partial summary judgment on the issue of fraud or deceit alleged in BBS and the Statons' counterclaim.  Importantly, the jury determined that JAS did not commit fraud or deceit.  Though JAS appeals the decision of the trial court to allow litigation of the claim in the first place, we need not address this issue.  Any future effort to relitigate the claims of fraud or deceit against JAS is barred by res judicata.  As we determined in *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, "[r]es judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, to a party in the earlier suit."  336 N.W.2d 153, 157 (S.D. 1983) (citing *Melbourn v. Benham*, 292 N.W.2d 335, 337 (S.D. 1980)).  We do not require strict privity and previously held:

> In deciding who are parties for the purpose of determining the conclusiveness of prior judgments, "the courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment that may be rendered."

*Schell v. Walker,* 305 N.W.2d 920, 922 (S.D. 1981) (quoting *Keith v. Willers Truck Serv.*, 64 S.D. 274, 266 N.W. 256, 258 (1936)).  Based on the jury's verdict and the res judicata effect of that determination, we decline to address this issue further.

[¶20.]     **(3) Whether the trial court abused its discretion by admitting testimony from various witnesses at trial.**

[¶21.]     "This Court reviews a decision to admit or deny evidence under the abuse of discretion standard."  *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12, 776 N.W.2d 58, 62 (citing *Fiechuk v. Wilson Trailer Co., Inc.*, 2009 S.D. 62, ¶ 8, 769 N.W.2d 843, 846).  "This applies as well to rulings on motions in limine."  *Id.* (citing *Dahlin v.*

*Holmquist,* 766 P.2d 239, 241 (Mont. 1988); *Gray v. Allen,* 677 S.E.2d 862, 865 (N.C. Ct. App. 2009)). "With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence." *State v. Asmussen*, 2006 S.D. 37, ¶ 13, 713 N.W.2d 580, 586 (citing *State v. Guthrie,* 2001 S.D. 61, ¶ 30, 627 N.W.2d 401, 415).

[¶22.]     Prior to trial, JAS filed fifteen motions in limine, fourteen of which were denied. The fourteen motions that were denied all relate to testimony at trial. JAS renewed its objections to the testimony of various witnesses at trial. On appeal, JAS groups the testimony into six categories.

[¶23.]     *Testimony that Swaby personally or ESP violated the covenant not to compete*

[¶24.]     "The court is to enforce and give effect to the unambiguous language and terms of the contract[.]" *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 25, 588 N.W.2d 897, 902 (quoting *Production Credit Ass'n v. Wynne,* 474 N.W.2d 735, 740 (S.D. 1991)). The purchase agreement at issue in this case and the covenant not to compete within the purchase agreement refer to "Buyer" and "Seller." The agreement identifies the Buyer as BBS and the Seller as JAS. Swaby personally and ESP, another company owned by Swaby, are not parties to the purchase agreement or the covenant not to compete. This language is unambiguous and the terms of the contract should be enforced as written. Notably, we have specifically addressed the separate nature of ESP and JAS in a previous case. *See Equip. Serv. Prof'ls, Inc. v. Denowh*, 2005 S.D. 20, 693 N.W.2d 54. We stated, "[i]t is improper to ignore the separate corporate identity of these entities." *Id.* ¶ 13, 693 N.W.2d at 58 (citing *Fed. Land Bank of Omaha v. Mogck,* 66 S.D. 514, 286 N.W. 322, 323 (1939)).

JAS and ESP are separate corporate entities. ESP and Swaby personally are not parties to the purchase agreement or the covenant not to compete. The trial court erred by allowing testimony that ESP and Swaby personally violated the covenant not to compete because it is irrelevant without a further showing that the seller, JAS, as the contracting party, violated the covenant not to compete alone or with others acting "as a principal, agent, employee, shareholder, director, [or] partner." Thus, admission of this testimony was an abuse of discretion.

[¶25.]    *Testimony that JAS and Swaby violated the business consultant agreement*

[¶26.]    JAS's complaint alleged that BBS and the Statons violated the purchase agreement between BBS and JAS. In  BBS and the Statons' answer and counterclaim against JAS, they alleged that JAS and Swaby violated the separate business consultant agreement by competing against them. As noted above, BBS and the Statons have never served a summons and complaint for their claims against Swaby personally. JAS was not a party to the business consultant agreement; Swaby personally was a party to the business consulting agreement. Importantly, the business consultant agreement did not contain a covenant not to compete. Again, Swaby is separate from the corporate entity of JAS. We cannot ignore the terms of the purchase agreement and business consultant agreement and the parties to those contracts. Thus, testimony regarding JAS's breach of the business consultant agreement was irrelevant because JAS was not a party to that agreement and the agreement did not contain a covenant not to compete. The admission of this testimony was an abuse of discretion.

[¶27.] *Testimony from Attorney Kurt E. Solay*[4]

[¶28.] Solay was subpoenaed by BBS and the Statons to testify because Solay drafted the purchase agreement, the independent contractor agreement, and the business consultant agreement. Solay was also present when the contracts were signed. At trial, Solay was asked to interpret the contracts, including the purchase agreement's covenant not to compete, and offer his specialized knowledge. However, "[t]he primary rule in the construction of contracts is that *the court must, if possible, ascertain and give effect to the mutual intention of the parties.*" *Huffman v. Shevlin,* 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955) (citations omitted) (emphasis added). *See also Weekley v. Weekley*, 1999 S.D. 162, 604 N.W.2d 19; *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D. 1982); *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980). Solay testified regarding his legal interpretation of the contract, which is not appropriate because the interpretation of the unambiguous contract should be supplied by the judge. Thus, the trial court abused its discretion in admitting Solay's testimony interpreting the contract.

[¶29.] *Testimony regarding other litigation against Swaby or ESP*

[¶30.] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). In general, evidence of wrongs or acts other than those at issue in the

---

4.  The issue whether it was appropriate for an attorney and partner in a law firm to be called as an adverse witness to testify against the client his law firm represented during the trial was not presented for review.

case is not relevant or admissible to prove a person's character. SDCL 19-12-5

(Rule 404(b)). However, evidence of other wrongs or acts may "be admissible for

other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." *Id.*

[¶31.]     In this case, BBS and the Statons argue that evidence regarding other

lawsuits against Swaby show his intent to deceive. BBS and the Statons allege that

Swaby and JAS defrauded them. Intent to deceive is an element of fraud. SDCL

53-4-5. However, Swaby is not a party to this lawsuit and testimony regarding

lawsuits against him personally or against ESP are not relevant and do not show

the intent of JAS to defraud BBS and the Statons. Further, as discussed, the claims

for fraud or deceit by JAS were rejected by the jury.

[¶32.]     *Testimony regarding witnesses' personal opinions that Swaby was
           dishonest*

[¶33.]     In general, evidence of a person's character or character trait is not

admissible except in certain circumstances. SDCL 19-12-4 (Rule 404(a)). The

credibility of a witness may be attacked in a limited way. *See* SDCL 19-14-9 (Rule

608(a)). South Dakota statutes provide:

> The credibility of a witness may be attacked or supported by
> evidence in the form of opinion or reputation, but subject to
> these limitations:
>
> (1) The evidence may refer only to character for truthfulness or
> untruthfulness; and
> (2) Evidence of truthful character is admissible only after the
> character of the witness for truthfulness has been attacked by
> opinion or reputation evidence or otherwise.

*Id.* This statute was adopted by Supreme Court Rule 78-2 in 1978. We have

subsequently held that witnesses may offer their opinion as to the character for

truthfulness of another witness. *See State v. Devall*, 489 N.W.2d 371, 377 (S.D. 1992); *State v. Tribitt*, 327 N.W.2d 132, 135 (S.D. 1982). However, "*[s]pecific instances of the conduct of a witness*, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in §§ 19-14-12 to 19-14-16, inclusive, *may not be proved by extrinsic evidence*." SDCL 19-14-10 (Rule 608(b)) (emphasis added).

[¶34.] In this case, Bob Lochner, Keith Denowh, and Paul Schneider testified about Swaby's reputation in the community for being untruthful and about their personal opinions as to whether Swaby's character was truthful. This testimony was properly admitted so that the jury might infer that Swaby was more or less likely to be testifying truthfully. Then Lochner, Denowh, and Schneider testified about the specific instances or circumstances that formed the basis for their opinions that Swaby's character was untruthful. Their testimony about the specific instances that formed the bases of their opinions about Swaby's character for truthfulness was impermissible. Thus, the trial court abused its discretion in admitting the testimony from Lochner, Denowh, and Schneider about the specific instances that formed the bases of their opinions.

[¶35.] *Testimony concerning conversations which occurred prior to the time the contracts were signed*

[¶36.] South Dakota statutes provide that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." SDCL 53-8-5. "[P]arol evidence cannot be used to

show the substance of the parties' agreement absent an ambiguity." *Johnson v.*
*Coss*, 2003 S.D. 86, ¶ 21, 667 N.W.2d 701, 708.

[¶37.]     BBS and the Statons offered evidence regarding Swaby's statements
about his intent not to comply with the covenant not to compete in the purchase
agreement. Again, Swaby was not party to the purchase agreement; JAS was the
seller in the purchase agreement. BBS and the Statons are not claiming fraud in
the inducement. In addition, the purchase agreement's terms are unambiguous.
Thus, the trial court abused its discretion in admitting evidence regarding
negotiations or Swaby's intent prior to the signing of the purchase agreement.

[¶38.]     **(4) Whether the trial court erred in denying BBS and Statons'
motion for partial summary judgment on the violation of the
covenant not to compete and motion for directed verdict[5] on
the covenant not to compete.**

[¶39.]     We review motions for summary judgment by determining "only
whether a genuine issue of material fact exists and whether the law was correctly
applied. If there exists any basis which supports the ruling of the trial court,
affirmance of a summary judgment is proper." *Jacobson v. Leisinger*, 2008 S.D. 19,
¶ 24, 746 N.W.2d 739, 745 (quoting *Cooper v. James*, 2001 S.D. 59, ¶ 6, 627 N.W.2d
784, 787) (internal quotation marks omitted). Further, "[a] trial court's ruling on a
motion for directed verdict is reviewed under the abuse of discretion standard."
*Harmon v. Washburn*, 2008 S.D. 42, ¶ 8, 751 N.W.2d 297, 300 (citing *Christenson v.*

---

5.     The parties and the trial court in this case refer to a motion for "directed
verdict." However, a motion for "directed verdict" should now be referred to
and analyzed as a motion for "judgment as a matter of law." SDCL 15-6-
50(a); 2006 S.D. Sess. Laws ch. 318 (Supreme Court Rule 06-44). *See also*
*Harmon v. Washburn,* 2008 S.D. 42, ¶ 10, 751 N.W.2d 297, 300.

*Bergeson,* 2004 S.D. 113, ¶ 10, 688 N.W.2d 421, 425). "'If sufficient evidence exists

so that reasonable minds could differ, a directed verdict is not appropriate.'" *Id.*

(quoting *Christenson,* 2004 S.D. 113, ¶ 22, 688 N.W.2d at 427).

[¶40.]         South Dakota statutes provide:

> Any person who sells the good will of a business may agree with
> the buyer to refrain from carrying on a similar business within a
> specified county, city, or other specified area, as long as the
> buyer or person deriving title to the good will from the seller
> carries on a like business within the specified geographical area.

SDCL 53-9-9. "What constitutes 'a similar business' is not further defined by

statute." *Franklin v. Forever Venture, Inc.*, 2005 S.D. 53, ¶ 12, 696 N.W.2d 545,

550. "However, based on the underlying purpose of statute, the offending activity

would need to be of a nature that detrimentally competes with the purchaser in

order to be considered a similar business. A California court required the business

or activity to be substantial, not 'infrequent or isolated transactions.'" *Id.* (citing

*Monogram Indus., Inc. v. Sar Indus., Inc.,* 134 Cal. Rptr. 714, 719 (Cal. Ct. App.

1976)).

[¶41.]         As part of the purchase agreement between JAS and BBS, JAS agreed

to sell the goodwill of its sheet metal installation business to BBS and also agreed to

not to compete with BBS. The covenant not to compete provided:

> Recognizing Buyer's need to protect their legitimate interest and
> goodwill, and in the furtherance of the sale of the business
> assets which includes the goodwill of the business being sold to
> Buyer, Seller agrees that for a period of seven (7) years following
> the Closing Date, Seller shall not alone or in combination with
> others, directly or indirectly, and whether acting as a principal,
> agent, employee, shareholder, director, partner or otherwise
> carry on, or be engaged in, or connected with, the sheet metal
> installation business within a geographical area of a one
> hundred (100) mile radius of Rapid City, South Dakota.

[¶42.]      BBS and the Statons assert that Swaby admitted to engaging in the installation of seven heating and air conditioning units within the geographical area and time period covered by the covenant not to compete. However, Swaby personally was not a party to the purchase agreement containing the covenant not to compete and is not an individual party to this lawsuit. Further, BBS and the Statons failed to assert a claim to pierce the corporate veil of JAS to attach liability to Swaby. In addition, BBS and the Statons' claims focus on the installation of heating and air conditioning units, but the purchase agreement and covenant not to compete include only sheet metal installation, and do not refer to heating and air conditioning installation. Factual issues exist as to whether sheet metal installation includes the installation of heating and air conditioning units or just the installation of sheet metal. Viewing the evidence in a light most favorable to the nonmoving party, BBS and the Statons did not establish that there was no genuine issue of material fact as to whether JAS violated the covenant not to compete. Thus, the trial court did not abuse its discretion in denying the motion for directed verdict (judgment as a matter of law) and it was appropriate to submit the issue of whether JAS violated the covenant not to compete for consideration by the jury.

[¶43.]      **(5) Whether the trial court erred in denying prejudgment interest.**

[¶44.]      "Prejudgment [interest] calculations are done as a matter of law. As such, the standard of review is de novo." *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2006 S.D. 72, ¶ 26, 720 N.W.2d 655, 663 (citing *City of Sioux Falls v. Johnson*, 2001

S.D. 108, ¶ 8, 632 N.W.2d 849, 852 ; *City of Colton v. Schwebach*, 1997 S.D. 4, ¶ 8, 557 N.W.2d 769, 771).

[¶45.]     South Dakota statutes require an award of prejudgment interest on compensatory damages, calculated "from the day that the loss or damage occurred[.]" SDCL 21-1-13.1.  "Prejudgment interest is now mandatory, not discretionary." *Alvine v. Mercedes-Benz of North America*, 2001 S.D. 3, ¶ 29, 620 N.W.2d 608, 614.  SDCL 21-1-13.1 provides, in part:

> If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered.  If necessary, special interrogatories shall be submitted to the jury.  Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16. . . .  The court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.

In this case, the jury received instructions on awarding prejudgment interest and special interrogatories to enable them to choose a date "when the loss or damage occurred." *See* SDCL 21-1-13.1.  The jury awarded compensatory damages to both JAS and BBS and the Statons, but the jury did not choose a date for the occurrence of the loss or damage to either party.  No prejudgment interest was awarded in this case, although it is mandated by statute.  *See Bunkers v. Jacobson*, 2002 S.D. 135, ¶ 45, 653 N.W.2d 732, 744.  Before entering the judgment, the trial court should have required the jury to choose a date when the damage occurred to enable the trial court to properly calculate prejudgment interest.  Accordingly, we reverse and

remand the issue of prejudgment interest to the trial court for determination of the amounts owed on damages.

[¶46.]     **(6) Whether the trial court erred in answering a question from the jury without giving either party notice or an opportunity to be heard.**

[¶47.]      Until 2006, South Dakota statutes explicitly required a trial court "to notify counsel and 'settle in writing . . . a response to a jury question sent out by the jury during deliberations.'" *Duda v. Phatty McGees, Inc.*, 2008 S.D. 115, ¶ 21, 758 N.W.2d 754, 760 (quoting SDCL 15-6-51(c) (amended July 1, 2006)).  Section 15-6-51(c) was altered to follow Federal Rule of Civil Procedure 51.  *Duda*, 2008 S.D. 115, ¶ 21, 758 N.W.2d at 760.  As we noted in *Duda*,

> [D]espite the fact that South Dakota rules no longer contain an express requirement that a court inform the parties of jury questions or that the questions be settled in writing, it is still error even under the federal rule for a court to answer jury instructions without giving the parties notice and an opportunity to be heard.

*Id.* (citing *Dunne v. Libbra*, 448 F.3d 1024, 1028 (8th Cir. 2006); *Murphy v. Tivoli Enters.*, 953 F.2d 354, 360-61 (8th Cir. 1992)).  "For such error to be reversible in a civil case, however, prejudice must be established."  *Id.* (citing *Dunne*, 448 F.3d at 1028).

[¶48.]     Here, during deliberations, the jury sent the following question to the trial court:

> #5 Fraud & Deceit-
> Does this pertain to consultant contract & if so does it pertain to time of signing the contract or does it mean for then the entire 7 years of the contract? Or does this pertain to all 3 contracts?

The trial court responded to the question, without notifying either side in the dispute:

> You Must Determine The Facts From The Testimony And Evidence Received In Open Court. The Law Is Contained In The Instructions And You Must Apply That Law To Your Specific Findings.

BBS and the Statons allege that the trial court's failure to notify the parties and its response resulted in the jury failing to award punitive damages. BBS and the Statons state that the trial court should have referred the jury to the specific instructions involving fraud and deceit, which were instructions 30, 31, and 32. However, referring the jury to the jury instructions generally rather than three instructions specifically does not demonstrate that BBS and the Statons were prejudiced by the trial court's response. BBS and the Statons fail to show why referring the jurors to the jury instructions generally, rather than the three specific instructions addressing the fraud or deceit claims, would make any difference in this case. Though the trial court erred when it did not inform the parties about the question, BBS and the Statons fail to demonstrate that their substantive rights were adversely affected.

## CONCLUSION

[¶49.]     As to the issues appealed by JAS, the trial court erred when it denied Swaby's motion to dismiss based on a failure to obtain jurisdiction because Swaby was never personally served with a third-party summons and complaint. We decline to address whether the trial court should have granted JAS's motion for partial summary judgment because the jury determined that there was no fraud or deceit and the res judicata effect of that determination. The trial court abused its

discretion in allowing testimony that JAS violated the business consultant agreement because JAS was not a party to the agreement. The trial court also abused its discretion in admitting the testimony of Solay interpreting the contract. In addition, the trial court abused its discretion in admitting the testimony from Lochner, Denowh, and Schneider regarding extrinsic evidence that formed the bases of their opinions regarding Swaby's character for truthfulness. Finally, the trial court abused its discretion in admitting parol evidence as the contract was unambiguous and no claim was made for fraud in the inducement.

[¶50.] As to the issues appealed by BBS and the Statons, the trial court did not abuse its discretion in denying BBS and the Statons' motion for directed verdict (judgment as a matter of law). It was appropriate to submit the issue whether JAS violated the covenant not to compete to the jury for consideration, but it was error to include Swaby personally. We reverse and remand the issue of damages on the counterclaim against JAS for breach of the covenant not to compete and the issue of prejudgment interest to the trial court for determination of the amount of interest owed. The trial court erred by failing to inform the parties about the question from the jury, but BBS and the Statons failed to demonstrate that their substantive rights were adversely affected.

[¶51.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and WILBUR, Justices, concur.